**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MATTHEW SHANKLE,

     Plaintiff-Appellee,

v.

B-G MAINTENANCE MANAGEMENT OF
COLORADO, INC., a corporation doing business
in the State of Colorado,

     Defendant-Appellant.

No. 97-1130

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 96-N-2932)**

---

Elisa Julie Moran (John Mosby with her on the brief), Denver, Colorado, for
Plaintiff-Appellee.

William C. Berger (Robert R. Miller with him on the briefs) of Stettner, Miller &
Cohn, P.C., Denver, Colorado, for Defendant-Appellant.

Jennifer S. Goldstein (C. Gregory Stewart, General Counsel; J. Ray Terry, Jr.,
Deputy General Counsel; Gwendolyn Young Reams, Associate General Counsel;
and Robert J. Gregory, with her on the brief), Equal Employment Opportunity
Commission, Washington, D.C, for amicus curiae Equal Employment Opportunity
Commission.

---

Before **TACHA, BRORBY** and **KELLY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Defendant-Appellant B-G Maintenance Management, Inc. ("B-G Maintenance") appeals the district court's order refusing to compel arbitration of Mr. Shankle's employment discrimination suit. Mr. Shankle alleges B-G Maintenance violated federal anti-discrimination laws when it terminated his employment because of his race, age, and disability. B-G Maintenance moved to compel arbitration based on an agreement to arbitrate signed by Mr. Shankle during his employment. The district court denied that motion and B-G Maintenance's motion for reconsideration. We exercise jurisdiction pursuant to 9 U.S.C. § 16(a)(1) and 28 U.S.C. § 1291, and we affirm.

## I. Background

B-G Maintenance, a private janitorial company, hired Mr. Shankle in 1987 as a janitor and later promoted him to shift manager. In 1995, B-G Maintenance distributed an Arbitration Agreement ("the Agreement") to its non-union employees, including Mr. Shankle. Mr. Shankle initially refused to sign the Agreement, but later acquiesced. The Agreement is broad in scope and covers all claims between the parties, including federal discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to e-17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a); the Americans with Disabilities

Act, 42 U.S.C. §§ 12101 to 12213; and the Age Discrimination in Employment

Act, 29 U.S.C. §§ 621-634. [1] In signing the Agreement, Mr. Shankle agreed that

---

[1] The Agreement, in part, states:

1. If I decide to file any claim (except for workers compensation or unemployment compensation benefits) against the company ... whether such claim could be filed in any court or governmental agency, I will use the process set forth in this Arbitration Agreement for resolving my claim for relief....

2. Arbitration is mandatory and will be final and binding.

3. Arbitration is the exclusive procedure for asserting any claim of any nature, whether arising out of common law, statute, governmental rule or regulation, public policy, or any other authority.

> I WAIVE ALL OTHER PROCEDURES WHICH MIGHT OTHERWISE BE, OR BECOME, AVAILABLE TO ME.
>
> I WAIVE ANY RIGHT TO HAVE ANY CLAIM I MIGHT BRING AGAINST THE COMPANY TRIED BY A JURY, COURT, ADMINISTRATIVE BODY, OR ANY OTHER AUTHORITY OTHER THAN AN ARBITRATOR AS PROVIDED FOR IN THIS AGREEMENT.
>
> I WAIVE ANY OF THE RIGHTS AND PROCEDURES WHICH MAY BE AVAILABLE TO ME UNDER THE COMMON LAW (BY EXPRESS OR IMPLIED CONTRACT, TORT, OR OTHER SOURCE), STATUTE (TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; THE AGE DISCRIMINATION IN EMPLOYMENT ACT; 42 U.S.C. 1981; EQUAL PAY ACT; FAIR LABOR STANDARDS ACT; OLDER WORKERS BENEFITS PROTECTION ACT; WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT; FEDERAL VETERANS AND MILITARY LEAVE AND REEMPLOYMENT STATUTES; FAMILY AND MEDICAL LEAVE ACT; AMERICANS WITH DISABILITIES ACT; ANY PROVISION OF TITLE 8 OF THE COLORADO REVISED STATUTES OTHER THAN CLAIMS FOR WORKERS COMPENSATION OR UNEMPLOYMENT COMPENSATION BENEFITS; OR ANY OTHER

"I will be responsible for one-half of the arbitrator's fees, and the company is responsible for the remaining one-half. If I am unable to pay my share, the company will advance the entirety of the arbitrator's fees; however, I will remain liable for my one-half."

B-G Maintenance terminated Mr. Shankle's employment in September 1995. Shortly thereafter, Mr. Shankle filed a charge of discrimination with the Equal Employment Opportunity Commission, which commenced an investigation. During the pendency of that investigation, the parties submitted Mr. Shankle's claims to the Judicial Arbiter Group, Inc. and selected an arbitrator as required by the Agreement. The Judicial Arbiter Group wrote to the parties, detailing the arrangements for the proposed arbitration including cost: "[t]he arbiter charges $250.00 per each hour of arbiter time and travel time at $125.00 per hour, and where appropriate, $45.00 for each hour of paralegal support time." The letter also required the parties to pay a $6,000.00 deposit. Several months later, Mr. Shankle filed another charge with the Equal Employment Opportunity Commission, voicing his objections to the upcoming arbitration. Mr. Shankle

FEDERAL, STATE OR LOCAL STATUTE); OR ANY OTHER FEDERAL, STATE OR LOCAL LEGAL AUTHORITY, WHETHER RELATED TO EMPLOYMENT OR NOT.

then canceled the arbitration, and filed the instant suit in federal court alleging his termination violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e-17, as amended by 42 U.S.C. § 1981; the Americans With Disabilities Act, 42 U.S.C. §§ 12101 to 12213; and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. B-G Maintenance thereafter filed its motion to compel arbitration.

In denying B-G Maintenance's motion, the district court recognized, in general, agreements to arbitrate employment discrimination claims are enforceable. However, the court found the Agreement's fee-splitting provision operated as "a disincentive to ... submitting a discrimination claim to arbitration." Therefore, the Agreement failed to provide a "reasonable substitute for a judicial forum" or "an effective means of vindicating" Mr. Shankle's federal rights and was therefore unenforceable. "We review a district court's ... denial of a motion to compel arbitration de novo, applying the same legal standard employed by the district court." *Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 796 (10th Cir. 1995).

## II. Federal Arbitration Act Applicability

As a preliminary matter, we must determine if the Federal Arbitration Act ("the Arbitration Act") governs our consideration of the arbitration agreement at

issue in this case. 9 U.S.C. §§ 1-16. The provisions of the Arbitration Act represent a "liberal federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp* . 500 U.S. 20, 25 (1991) (internal quotation marks and citation omitted). In substance, the Arbitration Act mandates that arbitration agreements contained in contracts involving commerce [2] "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and provides for orders compelling arbitration when one party fails to comply with a valid arbitration agreement, 9 U.S.C. § 4. The Arbitration Act thus creates a presumption in favor of arbitrability and courts must resolve all doubts concerning the scope of arbitrable issues in favor of arbitration. *Armijo* , 72 F.3d at 797-98.

However, the Arbitration Act does not apply to arbitration agreements contained in "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Mr. Shankle argues the Agreement falls within the § 1 exemption because he is a member of a class of workers engaged in interstate commerce. This court rejected a similar argument in *McWilliams v. Logicon, Inc.* , 143 F.3d 573 (10th Cir. 1998).

---

[2] It is undisputed that the contract at issue in this case involves interstate commerce.

In *McWilliams*, we held that § 1 is to be construed narrowly to apply only to "employees actually engaged in the channels of interstate commerce." *Id.* at 576. Accordingly, we concluded that even though the defendant employer's products and services affected interstate commerce, § 1 did not apply because defendant's employees, including plaintiff, did not directly engage in the channels of interstate commerce. *Id*. Likewise, even though B-G Maintenance's services affect interstate commerce at some level, Mr. Shankle's positions as janitor and shift manager did not directly affect the channels of commerce. Therefore, Mr. Shankle's claims are not insulated from Federal Arbitration Act coverage and we must apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (internal quotation marks and citation omitted).

## III. Enforceability

The parties and amicus curiae raise numerous arguments as to why the arbitration agreement should or should not be enforced in this case. However, we find one issue to be controlling: Is a mandatory arbitration agreement, which is entered into as a condition of continued of employment, and which requires an employee to pay a portion of the arbitrator's fees, unenforceable under the

Federal Arbitration Act?  The district court, relying principally on *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465 (D.C. Cir. 1997), held that such an agreement is not enforceable and we agree.  Accordingly, we need not address the parties' other arguments regarding enforceability.

Our analysis begins with a review of the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).  In that case, the Court held that agreements which require arbitration of statutory claims are enforceable under the Federal Arbitration Act.  *Gilmer*, 500 U.S. at 26 (holding that ADEA claims may be subjected to compulsory arbitration); *see also Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir. 1994) (concluding that Title VII claims are subject to compulsory arbitration).  The Court reasoned that by submitting statutory claims to arbitration, an individual does not forgo substantive rights provided by the statute, but merely submits their resolution to an alternate forum.  *Gilmer*, 500 U.S. at 26.  Moreover, the arbitral forum, like the judicial forum, provides an adequate mechanism for furthering public policy goals advanced by the statute.  *Gilmer*, 500 U.S. at 27-28; *Mitsubishi Motors*, 473 U.S. at 635-37.  The Court noted "'[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and

-8-

deterrent function.'" *Gilmer*, 500 U.S. at 28 (quoting *Mitsubishi Motors*, 473 U.S. at 637).

Thus, *Gilmer* reaffirmed the Arbitration Act's presumption in favor of enforcing agreements to arbitrate – even where those agreements cover statutory claims. While we recognize this presumption, *Metz,* 39 F.3d at 1487, we conclude that it is not without limits. As *Gilmer* emphasized, arbitration of statutory claims works because potential litigants have an adequate forum in which to resolve their statutory claims and because the broader social purposes behind the statute are adhered to. *Gilmer*, 500 U.S. at 28. This supposition, falls apart, however, if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights. *See Cole*, 105 F.3d at 1482-85 (concluding an arbitration agreement cannot force an employee to waive substantive rights provided by statute nor access to a neutral forum in which to enforce those rights); *Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998) (holding that arbitration agreement which proscribed award of Title VII damages was unenforceable because it was fundamentally at odds with the purposes of Title VII); *Graham Oil Co. v. ARCO Prod. Co.*, 43 F.3d 1244, 1248-49 (9th Cir. 1994) (striking arbitration clause that compelled parties to surrender important statutorily mandated rights in contravention of the statute), *cert. denied*,

-9-

516 U.S. 907 (1995). Accordingly, an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum. [3]

In this case, Mr. Shankle signed the Agreement as a condition of continued employment. The Agreement requires Mr. Shankle to arbitrate all disputes arising between he and his former employer. In order to invoke the procedure mandated by his employer, however, Mr. Shankle had to pay for one-half of the arbitrator's fees. [4] Assuming Mr. Shankle's arbitration would have lasted an average length of time, he would have had to pay an arbitrator between $1,875 and $5,000 to

---

[3] The arbitral forum, in most cases, is such an alternative. *Gilmer*, 500 U.S. at 26-33; *Metz*, 39 F.3d at 1487. However, when an arbitration agreement is accompanied by a fee-splitting provision like the one at issue in this case, enforceability is called into question for the reasons discussed below.

[4] B-G Maintenance argues we should enforce the Agreement because it allows "fee-shifting" if an employee is unable to pay his share of arbitrator fees. We disagree. While the Agreement states B-G Maintenance will advance the employee's share of fees if he or she is unable to pay, the employee "remain[s] liable" for his or her one-half. We fail to see how this language lessens the financial burden placed on the employee. Appellant also argues an arbitrator could "shift" fees by awarding them as costs if the employee is successful on the merits. However, it is unlikely that an employee in Mr. Shankle's position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum. Because the Agreement does not actually shift responsibility for payment of fees based on ability to pay, fee shifting does not affect our analysis in this case.

resolve his claims. [5] Mr. Shankle could not afford such a fee, and it is unlikely other similarly situated employees could either. The Agreement thus placed Mr. Shankle between the proverbial rock and a hard place – it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum. *See Cole*, 105 F.3d at 1484 (concluding employees would be unable to pursue statutory claims if required to pay for arbitrator fees in addition to the administrative costs and attorney fees, which accompany both arbitration and litigation). Essentially, B-G Maintenance required Mr. Shankle to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his statutory rights. Such a result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417-18 (1975) (explaining prophylactic and "make whole" objectives of Title VII); *Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1260 (10th Cir. 1976) (noting remedial purposes of the Age Discrimination in Employment Act), *aff'd* 434 U.S. 99 (1977). Given this deficiency, we conclude the Agreement is unenforceable under the Federal Arbitration Act. [6] *Gilmer*, 500

---

[5] The typical employment case averages between fifteen to forty hours of arbitrator time. *Cole*, 105 F.3d at 1480 n.8.

[6] Relying on *Cole*, Appellant argues we should "redline" the fee-splitting provision and compel arbitration. The arbitration agreement at issue in *Cole*,

U.S. at 28; *Cole*, 105 F.3d at 1484-85.

Appellant argues the fee-splitting provision should be enforced because it will ensure arbitral neutrality and the appearance of arbitral neutrality.  We reject a presumption that arbitrators will be unable to perform in a competent and impartial manner if one party pays the bill.      *See Gilmer* , 500 U.S. at 30 (rejecting a presumption that arbitration panels are biased);      *Cole* , 105 F.3d at 1485 ("It is doubtful that arbitrators care about who pays them, so long as they are paid for their services.").  In addition, there are numerous other protections in place that help to prevent arbitrator bias, such as professional and ethical standards.      *See Cole* , 105 F.3d at 1485.  Moreover, even if we were to agree fee-splitting in some way promotes neutrality, that benefit is substantially outweighed by the impediment such a provision places on access to the arbitral forum.      [7]

however, made no clear allocation of responsibility for payment of arbitrator's fees. *Cole*, 105 F.3d at 1485.  Because the contract was unclear on that point, the court was able to interpret the contract in a way that made it lawful. *Id.*  No such ambiguity exists in this case.  The Agreement clearly makes the employee responsible for one-half of the arbitrator's fees and we are not at liberty to interpret it otherwise. *See Awbrey v. Pennzoil Co.*, 961 F.2d 928, 930 (10th Cir. 1992) ("A court is without authority to alter or amend contract terms and provisions absent an ambiguity in the contract.").

[7] We note that several of the sources cited in Appellant's brief emphasize that a fee-splitting provision should not preclude access to the arbitral forum. *See* Michele L. Giovagnoli, Comment, *To Be or Not To Be?: Recent Resistance to Mandatory Arbitration Agreements in the Employment Arena*, 64 U.M.K.C. L.

Appellant also contends enforceability arguments should not be decided by a court but deferred to the arbitrator.  We agree the scope of judicial review of arbitration agreements is limited.    *See* 9 U.S.C. § 2.  However, it is within the court's power to consider the arbitrability of a petitioner's claims, *see Metz,* 39 F.3d at 1486-88, and to consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of [statutory] claims." *Mitsubishi Motors* , 473 U.S. at 628.  Therefore, the district court properly considered the arbitrability of Mr. Shankle's claims.

## IV.  Conclusion

For the reasons set forth above, we conclude the district court properly declined to compel arbitration of Mr. Shankle's lawsuit.  We therefore        **AFFIRM** the district court's order and     **REMAND**  this case for further proceedings.

---

Rev. 547, 579 (1996) ("[D]ivision of fees must not preclude an employee's access to the arbitration proceeding or impede the resolution of a claim."); William B. Gould & Charles A. Beardsley, *Alternative Dispute Resolution and the National Labor Relations Board:  Some Ruminations About Emergency Legal Issues, Jose Canseco, and Gertrude Stein*, available in B.N.A. Daily Labor Report, No. 69, at E-5 (April 18, 1997) ("In cases where the economic condition of a party does not permit equal sharing, the parties should make mutually acceptable arrangements to achieve that goal if at all possible."), Appellant's brief at 35.