**Kevin L. FULLER and Lee Williams, Plaintiffs,**

v.

**PEP BOYS—MANNY, MOE & JACK OF DELAWARE, INC., a Delaware corporation, Defendant.**

**No. Civ.A. 00–B–132.**

United States District Court,
D. Colorado.

March 29, 2000.

Todd J. McNamara, Denver, CO, for plaintiffs.

Katherine J. Peck, Matt A. Meyer, Holme Roberts & Owen LLP, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Asserting application of an arbitration clause, Defendant, Pep Boys—Manny, Moe & Jack of Delaware ("Pep Boys"), moves to compel arbitration of this employment discrimination action and dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction. Plaintiffs, Kevin Fuller and Lee Williams, oppose this motion. The issues are fully briefed and oral argument would not aid in their resolution. For the reasons set forth below, I grant Pep Boys motion to compel arbitration and I stay these proceedings pending arbitration. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

### I.

The following facts are undisputed, unless otherwise noted. Mr. Fuller, an African–American, began working for Pep Boys as an Installer on November 19, 1996. Pep Boys promoted him to a Mechanic's position on December 17, 1996. He was terminated for job abandonment on July 15, 1997. Two months later, Pep Boys rehired Mr. Fuller as an Installer. He was promoted to a Service Advisor and was transferred to another store on July 12, 1998. His employment was suspended and then terminated for job theft on September 17, 1998. In his complaint, Mr. Fuller alleges that he was subjected to a racially hostile work environment at Pep Boys and that his eventual termination was a pretext for retaliation. Mr. Fuller filed a charge of discrimination based upon race and retaliation with the Equal Employment Opportunity Commission ("EEOC") on December 9, 1998. He received a notice of right to sue from the EEOC on October 23, 1999.

Mr. Williams, also an African–American, was hired by Pep Boys on June 2, 1998, as a Second Assistant Manager. The Second Assistant Manager title was eliminated and replaced by Sales Floor Manager on May 2, 1999. Mr. Williams was promoted to First Assistant Manager and transferred to another store on October 10, 1999. He remains employed with Pep Boys. In his complaint, Mr. Williams alleges that he was discriminated against on the basis of race and was not promoted nor paid at a level commensurate with his position. He filed a charge of discrimination based upon race with the EEOC on Octo-

ber 1, 1999. Mr. Williams intends to request a notice of right to sue at the completion of the investigatory period, and intends to amend his complaint to include a claim under Title VII of the Civil Rights Act of 1964.

Both Mr. Fuller and Mr. Williams, as part of the job application process, executed a document entitled "Mutual Agreement to Arbitrate Claims" ("Arbitration Agreement"). By signing this agreement, they consented to the "resolution by arbitration of all claims or controversies." (Arbitration Agreement, p. 1). The Arbitration Agreement states that the claims covered by the agreement include "claims for discrimination (including, but not limited to, race . . .)" (Arbitration Agreement, p. 1). The agreement also provides as follows:

*Arbitration Fees and Costs*

The Company and I shall equally share the cost of the Arbitrator's fee, in the amount and manner determined by the Arbitrator, ten days before the first day of hearing. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party.

(Arbitration Agreement, p. 2);

*Construction*

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.

(Arbitration Agreement, p. 2).

Mr. Williams and Mr. Fuller filed suit together in this court on January 20, 2000, alleging the following claims for relief against Pep Boys:

(1) Race Discrimination pursuant to Title VII, by Mr. Fuller;

(2) Retaliation pursuant to Title VII, by Mr. Fuller; and

(3) Race Discrimination pursuant to 42 U.S.C. § 1981, by Mr. Fuller and Mr. Williams.

Pep Boy filed this motion to compel arbitration and dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 9 U.S.C. § 3, on February 10, 2000.

## II.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." In response to a Rule 12(b)(1) motion, the district court has wide discretion to consider affidavits, documents, and even hold a limited evidentiary hearing. *See Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995); *Morrison v. Colorado Permanente Medical Group, P.C.,* 983 F.Supp. 937, 939 (D.Colo.1997). Both parties to this Rule 12(b)(1) motion have submitted supporting exhibits, all of which I have considered in my ruling.

Under Rule 12(b)(6), a district court may also dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III.

Pep Boys contends that the Arbitration Agreement should be enforced and Mr. Fuller and Mr. Williams should be required to arbitrate any claims they may have. Thus, Pep Boys moves to enforce the agreement and dismiss this case. Mr. Fuller and Mr. Williams, however, place the validity of the Arbitration Agreement at issue because of its language forcing the employee to share in the costs of arbitration.

▮ When a dispute concerns whether there is a valid and enforceable arbitration agreement in the first instance, there is no presumption of arbitrability on this initial issue. *See Riley Mfg. Co., Inc. v.*

*Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998). A court will have jurisdiction to determine initially the existence of a valid arbitration agreement unless there is "clear and unmistakable evidence" within the four corners of the agreement that the parties intended to submit to an arbitrator the question of whether an agreement to arbitrate exists. *Id.* at 780. There is nothing in the agreement that demonstrates the parties' intent to submit to an arbitrator the threshold question of whether an enforceable agreement to arbitrate exists. Thus, I must resolve the initial question of arbitrability. *See id.* at 781.

Mr. Fuller and Mr. Williams do not dispute that, as part of the job application process, they executed the Arbitration Agreement. They further do not dispute its specific terms. Finally, they do not take issue with the proposition that there is a presumption favoring enforcement of agreements to arbitrate, even where those agreements cover statutory claims. Indeed, there is a strong federal policy favoring arbitration for dispute resolution, and this policy "requires a liberal reading of arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n. 27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This means that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See id.* at 24–25, 103 S.Ct. 927; *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir.1995) ("all doubts are to be resolved in favor of arbitrability") (citations omitted). District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute ... doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (citations omitted).

Neither party disputes that the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), controls this Arbitration Agreement nor does either side dispute the FAA codifies a strong federal policy favoring the enforcement of arbitration agreements. Sections 3 and 4 of the FAA permit a Court to compel arbitration when one party has failed or refused to comply with an arbitration agreement.

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the United States Supreme Court addressed the arbitrability of federal statutory employment claims. In that case, the Court held that an arbitration agreement between an employee and his employer subjected the employee's age-discrimination claim to mandatory arbitration. *See id.* at 27–33, 111 S.Ct. 1647. Following *Gilmer*, federal courts have enforced agreements to arbitrate with respect to employment discrimination claims under the ADA and Title VII. *See, e.g., Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir. 1994) (Title VII claims subject to compulsory arbitration).

Although Mr. Fuller and Mr. Williams recognize this strong federal policy in favor of arbitration, they argue that this presumption is not without limits. They contend that the "Arbitration Fees and Costs" section of the Arbitration Agreement, requiring the employee to equally share the costs of arbitration, renders the agreement unenforceable under Tenth Circuit precedent. *See Shankle v. B–G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir.1999). In *Shankle*, the Tenth Circuit found an arbitration agreement unenforceable where a plaintiff was required to pay one-half the costs of arbitration because such a requirement effectively limited access to the resolution of claims. *See id.* at 1235. The plaintiff in that case was unable to afford the cost of arbitration.

Pep Boys does not contest Mr. Fuller and Mr. Williams' statements that they could not afford to split the cost of arbitration. (Fuller Affidavit, Williams Affidavit). Neither does Pep Boys contest the holding in *Shankle*. Instead, Pep Boys distin-

guishes the Arbitration Agreement in this case because it contains a savings clause in its "Construction" section which provides as follows: "If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement." (Arbitration Agreement, p. 2). Pep Boys concedes that, under *Shankle*, the fee-splitting provision is unenforceable. It argues, however, that the agreement should be fully enforced absent these unenforceable provisions.

Mr. Fuller and Mr. Williams respond that this same argument was made and rejected in *Shankle*. In *Shankle*, the Court notes in a footnote that the appellant had argued that the Court should "redline" the fee-splitting provision and compel arbitration. *See id.* at 1235 n. 6. The Court declined to strike the offending provisions in that case because the arbitration agreement "clearly makes the employee responsible for one-half of the arbitrator's fees *and we are not at liberty to interpret it otherwise." See id.* (emphasis added). I find this case distinguishable.

■ I am bound by the Tenth Circuit's decision in *Shankle,* and I agree that as far as the Arbitration Agreement imposes any of the arbitration fees on the Plaintiffs in this case, it is unenforceable. *See id.* Therefore, the entire paragraph entitled "Arbitration Fees and Costs" is unenforceable and stricken. However, I agree with Pep Boys that the "Construction" section saves the remainder of the agreement. *Shankle* does not stand for the proposition that a fee-splitting provision voids, *ab initio,* an agreement to arbitrate. *See id.* at 1234 n. 3 ("when an arbitration agreement is accompanied by a fee-splitting provision like the one at issue in this case, enforceability *is called into question* ") (emphasis added). Federal case law and statutory law clearly creates a presumption in favor of arbitrability. *See id.* at 1233. Thus, I must resolve all doubts in favor of arbitration and the Arbitration Agreement must be liberally read. *See id.; see also Moses*

*H. Cone,* 460 U.S. at 23, 103 S.Ct. 927. The Court in *Shankle* concluded that it was not at liberty to interpret the contract without the fee-splitting provision. In their respective opinions, neither the Tenth Circuit nor the District Court address any sort of a savings clause, and I assume that the contract in front of those courts did not have one. *See id.; Shankle v. B–G Maintenance Management of Colorado, Inc.,* 1997 WL 416405 (D.Colo.1997).

The savings clause in the "Construction" section of the Arbitration Agreement, allows me to disregard the fee-splitting provision so as to uphold the validity of the agreement. This is consistent with contract interpretation precedent in this circuit. In *N.L.R.B. v. Tulsa Sheet Metal Works, Inc.,* 367 F.2d 55 (10th Cir.1966), a case involving a collective bargaining agreement, the Tenth Circuit held that where an agreement contains a "savings and severability" clause, the agreement "should not be completely obliterated because some provisions are beyond the legal limits ..., unless such illegal provisions permeate the complete contract to such an extent as to affects its enforceability entirely." *Id.* at 59. Here, the fee-splitting clause does not "permeate" the entire Arbitration Agreement; rather, it merely provides for the allotment of costs between the parties. Striking this provision does not affect any other provision in the agreement and enables me to uphold its validity.

■ Accordingly, I conclude that Mr. Fuller and Mr. Williams' claims for relief against Pep Boys are subject to arbitration. Pep Boys requests that I enforce the Arbitration Agreement and dismiss this case pending arbitration. Although I will enforce arbitration, I stay these proceedings instead of dismissing them. Both parties concede that the FAA applies to this action. (Motion to Compel Arbitration, p. 1) (Response, p. 2). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration

under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Under the FAA, a "court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Williams v. Imhoff,* 203 F.3d 758, 764 (10th Cir.2000) (citing *McMahan Sec. Co. v. Forum Capital Markets,* 35 F.3d 82, 85 (2d Cir.1994)). Although Pep Boys did not technically "apply" to stay this action, it is within my power to order it stayed. Other courts that have considered this issue have held, and I agree, that the FAA does not impose a duty on a party to request arbitration and that a request for a stay is not a mandatory prerequisite for a grant of a stay. *See, e.g., Martin Marietta Aluminum, Inc. v. General Electric Co.,* 586 F.2d 143, 147 (9th Cir.1978); *Mr. Mudd, Inc. v. Petra Tech, Inc.,* 892 S.W.2d 389, 391 (Mo. Ct.App.1995). Here, Pep Boys' motion for dismissal sufficiently raised the arbitration issues. I believe the proper course of action, upon my finding an enforceable agreement to arbitrate, is to stay the suit pending arbitration. *See* 9 U.S.C. § 3.

Accordingly, I ORDER that:

(1) Pep Boys' motion to compel arbitration is GRANTED;

(2) Pep Boys' motion to dismiss is DENIED;

(3) These proceedings are STAYED pending arbitration;

(4) The hearing set on this matter for June 15, 2000 at 2:00 p.m. is VACATED; and

(5) This case is RETIRED administratively from the active docket subject to reactivation for good cause.