**Vickie GOURLEY, Gina Trammell, Maria Sharp, Deborra Storesund, Plaintiffs,**

v.

**YELLOW TRANSPORTATION, LLC, Defendant.**

**No. CIV.A. 01–B–133.**

United States District Court, D. Colorado.

Dec. 26, 2001.

Denver, CO, for Vickie Gourley, Gina Trammell, Maria Sharp.

Paula Dee Greisen, Miller, Lane, Killmer & Greisen, LLP, Denver, CO, for Deborra Storesund.

Paul F. Lewis, Dianne Michelle Kueck, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, CO, Kristen L. Mix, Welborn Sullivan Meck & Tooley, P.C., Denver, CO, for Yellow Transp., LLC.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs Vickie Gourley, Gina Trammell, Maria Sharp, and Deborra Storesund, ("Plaintiffs") bring ten claims for relief against Defendant Yellow Transportation, LLC. ("Yellow Cab"). Yellow Cab moves to stay litigation and to compel arbitration. The motion is adequately briefed and oral argument was held on December 21, 2001. For the reasons set forth below, I deny the motion. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

### I. Facts

The following facts are alleged by the Plaintiffs in their Second Amended Complaint Yellow Cab runs a taxi-cab company. Plaintiffs were employees of Yellow Cab at various times between 1995 and 2001. Vickie Gourley was Director of Marketing, Gina Trammell was a Senior Accountant, Maria Sharp was in sales, and Deborra Storesund was a "cage" manager in the area that dispatches taxi-cabs. Yellow Cab has a long history of disparate treatment of female employees in pay, promotion, benefits, and bonuses. It has also long fostered a hostile work environment. Plaintiffs allege that they were each victimized by Yellow Cab in various ways.

Paula Dee Greisen, Laura E. Schwartz, Miller, Lane, Killmer & Greisen, LLP,

Ms. Gourley alleges that she had an affair with the President and CEO of Yellow Cab, Steve Fowler. Following the end of the relationship, Ms. Gourley experienced retaliation and harassment from Mr. Fowler and other employees. The harassment included threatening letters using a slang word for a female's genital area, crude sexual jokes, lewd comments, unwanted sexual touching, and Happy Meal toys placed in explicit sexual positions on her desk. Ms. Gourley's annual salary fell every year, and Yellow Cab withdrew a compensation offer made to her after it learned that she was negotiating a deal which would have resulted in a commission of approximately $225,000. Yellow Cab entered into a contract with Ms. Gourley in an effort to resolve her claims of sexual harassment and retaliation. Yellow Cab failed to live up to the terms of that contract. Ms. Gourley was fired approximately one hour after Yellow Cab was informed that she intended to proceed with legal claims.

Ms. Trammel also alleges that she experienced sexual harassment and a hostile work environment, including obscene sexual jokes, display of anatomically correct medical models, crude sexually-oriented bumper stickers on display in work areas, comments suggesting that she achieved her position in the company by providing sexual favors to superiors, graphic jokes which used slang terms for the female genital area, and the display of magazines with naked women on the cover. One male employee untucked his shirt and unbuttoned his pants before opening the door following a private meeting with Ms. Trammel to give the impression that sexual relations had occurred. Another male employee walked to Ms. Trammels' side of her desk, reached down, and asked if he could grab her "crotch" to see if she'd begun to "grow a dick." Yellow Cab failed to pay Ms. Trammel promised raises and

bonuses, and her salary did not keep pace with male accountants. She was also excluded from functions with other managers. Ms. Trammel left the company in 2001.

Ms. Sharp alleges that following her employment at Yellow Cab employees began to make comments to her regarding Mr. Fowler's sexual interest in her, including comments using lewd sexual terms. She alleges that Mr. Fowler attempted to kiss her following a business lunch and subjected her to unwanted touching. Mr. Fowler also offered Ms. Sharp a position as his assistant with a cubicle immediately outside his office. Although Ms. Sharp complained to several superiors about the behavior, no action was taken. Ms. Sharp also witnessed the retaliation against Ms. Gourley following Ms. Gourley's complaints. Ms. Sharp left the company in 2001.

Ms. Storesund also alleges that she had an affair with Mr. Fowler. Following the end of the relationship, Ms. Storesund's managerial duties were stripped from her and Mr. Fowler was openly hostile to her. In May 2001 she was told that Yellow Cab was moving her from the cage to a desk job at the same salary. She protested, not wishing to lose the tips that she received from the taxi drivers as cage manager. Yellow Cab told her that if she remained in the cage she would become an hourly employee, thus resulting in a net loss of income regardless of the position. She chose to remain in the cage and was fired one week later. She was offered a $10,000 severance package on the condition that she never speak of her employment with Yellow Cab except with Yellow Cab attorneys or if required by law. She declined.

Plaintiffs bring the following claims for relief against Yellow Cab: (1) sex discrimination and sexual harassment/ hostile work

environment (on behalf of all Plaintiffs) and constructive discharge (on behalf of Ms. Trammell and Ms. Sharp) in violation of Title VII; (2) retaliation in violation of Title VII (on behalf of Ms. Gourley); (3) willful breach of contract (on behalf of Ms. Gourley); (4) willful breach of contract (on behalf of all Plaintiffs); (5) negligent supervision and retention (on behalf of all Plaintiffs); (6) promissory estoppel (on behalf of all Plaintiffs); (7) outrageous conduct (on behalf of all Plaintiffs); (8) violation of Colo.Rev.Stat. § 8–4–101 *et seq.* (on behalf of Ms. Gourley and Ms. Trammell); (9) wrongful discharge in violation of public policy (on behalf of Ms. Gourley and Ms. Storesund); and (10) violation of 42 U.S.C. § 1985(2) (on behalf of Ms. Trammell, Ms. Gourley and Ms. Sharp).

## II. Motion to Stay Litigation and Compel Arbitration

Yellow Cab moves to stay litigation and to compel arbitration, based on an arbitration clause in its employment manual and signed confirmations executed by Plaintiffs. Appendix A to the Yellow Cab Employee Handbook is titled "Dispute Resolution Agreement." It states in pertinent part:

*ARBITRATION AGREEMENT*

Yellow Transportation, LLC, its representatives, and the undersigned employee (collectively referred to as the "Parties") agree and stipulate that any claim or controversy arising out of or relating to the employee's employment with the Company, as defined more fully herein, shall be submitted to arbitration in order that both Parties receive a prompt, fair and final disposition of dispute. In consideration of this agreement to arbitrate, the Parties mutually agree to waive all rights to a civil court trial or administrative hearing of any claim or controversy arising out of or relating to

the employee's employment with the Company.

*CONTROVERSIES OF [SIC] CLAIMS SUBJECT TO ARBITRATION AGREEMENT*

The claims or controversies subject to this arbitration agreement include, but are not limited to, those claims or controversies, whether asserted individually or as a member of a class, against Yellow Transportation, LLC and/or its representatives under Title VII of the Civil Rights Act of 1964 ... state and local laws governing employment; and/or the statutory and/or common law of contract and tort ... constructive discharge, [and] breach of contract ....

Yellow Cab's Exhibit A at 79. The Arbitration Agreement requires the parties to split the fees and expenses of arbitration.

Each Plaintiff signed an "Acknowledgment of Handbook Receipt and Contract Disclaimer" which states, *inter alia,* that the Handbook is "not a contract" and that the employee remains at-will. *See* Yellow Cab's Exhibit B–E. Each Plaintiff also signed an "Arbitration Acknowledgment and Agreement." Although this was a separate piece of paper, not attached to the Employee Handbook, it can only be read in the context of the Handbook. It does not state any terms of an Arbitration Agreement, but rather incorporates by reference the terms outlined in the Handbook. The Arbitration Acknowledgment states in pertinent part,

*In accord with the above Arbitration Agreement,* I agree to arbitrate any and all employment-related *claims that are subject to the Arbitration Agreement* and that would otherwise be subject to administrative or judicial resolution....

I acknowledge that this Arbitration Agreement is supported by good and adequate consideration, including the

Company's waiver of its rights to resolve any employment-related issue in an administrative or judicial forum....

I understand and agree that nothing in this Arbitration Agreement shall be interpreted or construed as a contract for employment or alters my status as an at-will employee of the Company. I further understand and agree that the terms of this Arbitration Agreement shall continue and be binding beyond my actual employment with the Company. Yellow Cab's Exhibit F–I (emphasis added).

The phrases "In accord with the above Arbitration Agreement" and "claims that are subject to the Arbitration Agreement" clearly refer to the language in the Handbook. Moreover, it appears that the Handbook, Exhibit A, the Contract Disclaimer, Exhibits B–E, and the Arbitration Acknowledgment, Exhibits F–I, constitute an employee package.

▌ Yellow Cab argues that the existence of the Arbitration Agreement requires that this case be arbitrated. There is a strong federal policy favoring arbitration for dispute resolution, and this policy "requires a liberal reading of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n. 27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This means that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See id.* at 24–25, 103 S.Ct. 927; *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir.1995) ("All doubts are to be resolved in favor of arbitrability") (citations and quotations omitted). District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United*

*Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (citations omitted). *See also Fuller v. Pep Boys–Manny, Moe & Jack of Del., Inc.*, 88 F.Supp.2d 1158 (D.Colo.2000). The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") codifies a strong federal policy favoring the enforcement of arbitration agreements. Sections 3 and 4 of the FAA permit a Court to compel arbitration when one party has failed or refused to comply with an arbitration agreement. Neither party disputes that the FAA controls this case.

▌ The Supreme Court made it clear this year in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) that arbitration clauses in employment contracts are enforceable. *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27–33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (arbitration agreement between an employee and employer subjected the employee's age-discrimination claim to mandatory arbitration); *Shankle v. B–G Maint. Mgmt. of Co., Inc.*, 163 F.3d 1230 (10th Cir.1999) (recognizing that *Gilmer* reaffirmed the Arbitration Act's presumption in favor of enforcing agreements to arbitrate statutory claims, but holding agreement unenforceable because of fee-shifting provision); *McWilliams v. Logicon, Inc.*, 143 F.3d 573 (10th Cir.1998) (affirming compelled arbitration under the ADA); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir.1994) (Title VII claims subject to compulsory arbitration); *Fuller v. Pep Boys–Manny, Moe & Jack of Del., Inc.*, 88 F.Supp.2d 1158 (D.Colo. 2000) (employment discrimination claims subject to compulsory arbitration). Thus, an Arbitration Agreement in an employment contract generally results in manda-

tory arbitration, even after the employee has left the company.

 Here, however, Plaintiffs argue that although they signed an agreement to arbitrate, no contract to arbitrate was formed. When a dispute concerns whether there is a valid and enforceable arbitration agreement in the first instance, there is no presumption of arbitrability on this initial issue. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998). A court has jurisdiction to determine initially the existence of a valid arbitration agreement unless there is "clear and unmistakable evidence" within the four corners of the agreement that the parties intended to submit to an arbitrator the question of whether an agreement to arbitrate exists. *Id.* at 780. Nothing here demonstrates the parties' intent to submit to an arbitrator the threshold question of whether an enforceable agreement to arbitrate exists. Thus, I must resolve the threshold question whether there exists an agreement to arbitrate. *See id.* at 781.

 Plaintiffs point out that Arbitration Agreement is contained in the Employee Handbook. That Handbook repeatedly states that the Handbook is not a contract and is in no way binding on Defendant. Plaintiffs therefore argue that any "contract" is illusory at best. I agree. The Handbook terms at issue state,

> The Company is a growing and changing organization. Therefore, the Company reserves the right to modify, supplement, or delete provisions of this handbook, or the policies or procedures on which they may be based, at anytime [sic] without advance notice. Therefore, the company's [sic] actions may vary from the written policy . . . .
>
> THE PROVISIONS IN THIS HANDBOOK, INDIVIDUALLY AND COLLECTIVELY, DO NOT, IN ANY WAY, CONSTITUTE A CONTRACT OF EMPLOYMENT, A COVENANT, OR AN AGREEMENT, WHETHER EXPRESS OR IMPLIED. NOTHING CONTAINED IN THIS HANDBOOK SHOULD BE CONSTRUED AS A GUARANTEE OF CONTINUED EMPLOYMENT OR A GUARANTEE THAT EMPLOYEES WILL NOT BE DISCHARGED WITHOUT A HEARING. ALL EMPLOYEES ARE "AT-WILL" EMPLOYEES UNDER STATE LAW. THIS MEANS THAT THE EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANYTIME [SIC] BY EITHER THE EMPLOYEE OR THE COMPANY WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE.

Yellow Cab's Exhibit A at 5. The "Acknowledgment of Handbook Receipt and Contract Disclaimer" signed by each Plaintiff states that,

> I understand and agree that the Company may revise, rescind, or modify any portion of the Handbook at any time and that I shall be bound by such change.
>
> I acknowledge that the Employee Handbook is a set of guidelines, which the Agency may interpret in its sole discretion, and that it is **not a contract**, and imposes no legal obligation of any kind on the Company.

Yellow Cab's Exhibit B–E.

Here, the terms of the Arbitration Agreement were set out in the Handbook, and not on a separate form. Therefore, the disclaimers in the Handbook also apply to the Arbitration Agreement. Although the Arbitration Acknowledgment and Agreement purports to recite sufficient consideration for the employee's promise to arbitrate, the consideration is made illusory by Yellow Cab's disclaimers. Yellow Cab simultaneously attempts to bind the employee to the Arbitration Agreement as written, while withholding the power to interpret, modify, rescind, or supplement its terms unilaterally. Plaintiffs would be both irretrievably bound and at the Defendants' mercy, while Defendants are bound to nothing. Such terms in a contract ren-

der it illusory, as it binds one party without binding the other.

In a case with nearly identical facts, the defendant invoked an arbitration agreement which required employment discrimination claims to be arbitrated, but then stated, "This arbitration provision may be enforced according to Colorado law, *but does not constitute an employment agreement ... and does not make any other provision of the Employee Manual contractual or otherwise legally enforceable.*" The Court responded:

> Where an employee handbook sets forth the "binding arbitration agreement" invoked by a defendant-employer to urge the dismissal of an employee's Title VII claims, a disclaimer in the handbook that nothing other than the arbitration provision is "legally enforceable" is fatal to the defendant's position. While an employer may wish the power to select which representations in its manual an employee's "acknowledgment and receipt" will make binding, I will neither confer such power nor give it the imprimatur of this court.

*Diaz v. Arapahoe (Burt) Ford, Inc.,* 68 F.Supp.2d 1193, 1194 (D.Colo.1999); *Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 939 (4th Cir.1999) (agreements to arbitrate are invalid where they allow the employer to unilaterally change the rules); *Dumais v. Am. Golf Corp.,* 150 F.Supp.2d 1182, 1193 (D.N.M.2001) (arbitration agreement that bound employee but left employer free to renege or to unilaterally modify the terms at any time was illusory and could not be enforced against employee). I therefore conclude that the Arbitration Agreement is no agreement at all.

 Even assuming, however, a contract exists, it cannot be enforced because it requires Plaintiffs to share the costs of arbitration. In *Shankle v. B–G Maint. Mgmt. of Co., Inc.,* 163 F.3d 1230 (10th Cir.1999) the Tenth Circuit found an arbitration agreement unenforceable where a plaintiff was required to pay one-half the costs of arbitration because such a requirement effectively limited access to a forum for resolution of claims. *See id.* at 1235. The plaintiff in that case was unable to afford the cost of arbitration. *See id.* Similarly, in *Fuller v. Pep Boys–Manny, Moe & Jack of Del., Inc.,* 88 F.Supp.2d 1158 (D.Colo.2000), I enforced an arbitration agreement, but severed the cost-sharing provision after the plaintiff averred that he could not afford the cost of arbitration.

In reaching its decision, the Tenth Circuit in *Shankle* first noted that:

> As *Gilmer* emphasized, arbitration of statutory claims works because potential litigants have an adequate forum in which to resolve their statutory claims and because the broader social purposes behind the statute are adhered to. This supposition, [sic] falls apart, however, if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights.

*Shankle,* 163 F.3d at 1234. The Court then found that the arbitration agreement:

> placed Mr. Shankle between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum.... Essentially, B–G Maintenance required Mr. Shankle to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his statutory rights. Such a result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws.

*Shankle,* 163 F.3d at 1235. I severed the cost sharing provision in *Fuller* for the same reason.

Here, Plaintiffs argue that they are in financial straits, and cannot afford the costs of arbitration. *See* Plaintiff's Exhibits 3–5. Three of the four Plaintiffs aver that, although employed, their financial situation is precarious. Ms. Gourley plans to file for bankruptcy, Ms. Trammell is working part-time without benefits and must pay health insurance for her children out-of-pocket, and Ms. Storesund is struggling to pay her mortgage. *See id.* Each avers that they cannot afford the costs associated with arbitration, and do not foresee the ability to pay in the future. *See id.* Thus, enforcing the arbitration agreement would prevent then from fully prosecuting their claims. Further, there is no severability clause in the agreement which would allow me to enforce arbitration without the offending terms.

■ Plaintiffs further argue that the hearing time limit imposed by the Handbook renders the arbitration agreement unenforceable. I agree. The Handbook states,

The hearing shall be conducted by the arbitrator in whatever manner will most expeditiously permit full presentation of the evidence and arguments of the parties. Normally, the hearing shall be completed within one (1) day. In unusual circumstances and for good cause shown, the arbitrator may schedule an additional hearing to be held within five (5) days.

*See* Yellow Cab's Exhibit A at 81 § k. Plaintiffs argue that this language limits the hearing to two days, an impossible period of time in which to present their case. I agree that this provision limits Plaintiffs' access to an adequate forum under *Shankle.*

■ Plaintiffs next argue that the agreement's limitation on post-hearing briefs violates their right to collect attorney fees if successful. I agree again. The Handbook states,

The arbitrator may receive and consider the evidence of witnesses by affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of the objection made to its admission. All documents to be considered by the arbitrator shall be filed at the hearing. *There shall be no post-hearing briefs.*

*See* Yellow Cab's Exhibit A at 81 § n (emphasis added).

■ Congress has given federal trial courts the discretion to award a reasonable attorney fee to a prevailing party in a case arising under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 1988(b) and 2000e–5(k). The Supreme Court has noted that "a Title VII plaintiff ... is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 523, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (quotations and citations omitted). Relying on Congress' intent to cast civil rights plaintiffs in the role of private attorneys general, and on the fact that attorney fee awards to prevailing plaintiffs are necessarily awarded against violators of federal law, the Supreme Court has held that a prevailing civil rights plaintiff should ordinarily recover his attorney fees unless special circumstances would render such an award unjust. *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416–18, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Thus, an arbitration agreement that denies a Plaintiff these statutory rights may be void as against public policy. *See McCaskill v. SCI Mgmt. Corp.,* 2000 WL 875396 *5–6 (N.D.Ill.Jun 22, 2000) (noting that an employee may not be forced to

waive her statutory rights in exchange for employment, but finding the agreement enforceable because despite the language of the agreement requiring Plaintiff to pay her costs and attorneys' fees, the arbitrator may take these payments into account and increase the award accordingly); *De-Gaetano v. Smith Barney, Inc.*, 983 F.Supp. 459, 469–70 (S.D.N.Y.1997) (citing the EEOC's criticism of mandatory arbitration agreements that contain "provisions flagrantly eviscerating core rights and remedies that are available under the civil rights laws," including provisions that "deny any award of attorney's fees to the civil rights claimant" in concluding that "[t]he relevant portions of the Arbitration Policy are therefore void as against public policy, and cannot be enforced so as to deprive [Plaintiff] of her entitlement to a reasonable attorney's fee."). Thus, the limitation on post-hearing brief could prevent Plaintiffs, if successful, from collecting their attorney fees. Such a provision violates public policy.

■ Yellow Cab attempts to remedy these defects by agreeing to proceed with arbitration while foregoing the three offending provisions. However, as previously noted, the Arbitration Agreement contains no severability clause. Further, Yellow Cab's attempts merely serve to underscore that the Handbook was written so as to provide unilateral flexibility to Yellow Cab regarding the Agreement's provisions, but no flexibility to its employees. I would therefore decline Yellow Cab's invitation to enforce the Arbitration Agreement absent the offending provisions.

Accordingly, I ORDER that:

(1) Defendant's motion to stay litigation and to compel arbitration is DENIED.