### Laura PÉREZ, Plaintiff,

### v.

### HOSPITALITY VENTURES–DENVER LLC; James Bowie and Howard Langdon, Defendants.

### No. CIV.A. 01–K–2435.

United States District Court,
D. Colorado.

Feb. 18, 2003.

William J. Martinez, McNamara & Martinez, LLP, Denver, CO, for plaintiff.

John R. Paddock, Jr., Hale, Hackstaff, Tymovick, LLP, Denver, CO, Mark A. Wielga, Jason Bryce Robinson, Temkin, Wielga & Hardt, L.L.P., for defendants.

### MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This matter is before me on Defendant Hospitality Ventures–Denver LLC's ("HVD") Motion to Compel Arbitration and to Stay Proceedings and Defendants James Bowie's and Howard Langdon's Joinder in this Motion. Having carefully considered the motion and related filings, and all applicable legal authorities, and being fully advised in the premises, I rule as follows:

Plaintiff Laura Pérez asserts claims against her former employer, HVD, and two of its managers and principals under the Family and Medical Leave Act and state tort law. Defendants contend Pérez's claims are subject to a binding arbitration agreement and moves to compel arbitration and to stay this action until arbitration is completed. The basis of this contention is Section 1004 of HVD's "Hospitality First! Employee Handbook," which states that the employee and HVD [1] have agreed to submit any dispute arising under the Handbook or employment with HVD to binding arbitration pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, with the employee and HVD to split the arbitration costs and bear their own legal costs. Section 1004 provides separate signature lines for the employee and a HVD representative, but only Pérez executed this section. In earlier sections of the Handbook, HVD reserved the unilateral right to revise, modify, delete or add to any and all policies, procedures, work rules or benefits stated in the Handbook, while also requiring its employee to acknowledge that nothing in the Handbook created a promise or representation of continued employment. Pl.'s Resp. in Opp. to Mot. to Compel, Exh. 1, §§ 1002, 1003.

Pérez argues the alleged arbitration agreement is illusory and unenforceable on multiple grounds. I agree.[2] First, the agreement is unenforceable under the Tenth Circuit's decision in *Shankle v. B–G Maintenance Management of Colorado,* *Inc.,* 163 F.3d 1230 (10th Cir.1999). In *Shankle,* the circuit court considered whether a mandatory arbitration agreement is unenforceable under the Federal Arbitration Act when it requires the employee to pay a portion of the arbitration costs. *Id.* at 1234. The court held such an agreement is not enforceable where the costs to be borne by the employee under the fee-splitting agreement effectively deprive her of an accessible forum in which to resolve her statutory claim and vindicate her statutory rights. *Id.* at 1234–35.

Defendants argue *Shankle* has been abrogated by the Supreme Court's decision in *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). At most, however, *Green Tree* stands for proposition that the employee must demonstrate that, under the arbitration agreement, she was likely to incur substantial fees and costs that would prevent her from vindicating federal statutory rights. *See id.* at 89–91, 121 S.Ct. 513. The Court held the employee in *Green Tree* had not carried this burden because the arbitration agreement did not state who was to bear arbitration costs and because the employee failed to make a factual showing that she was likely to incur prohibitive expenses. 531 U.S. at 91–92, 121 S.Ct. 513. Neither circumstance is present in this case, as the alleged arbitration agreement specifically provides for Pérez to bear half of the arbitration costs and Pérez has presented affidavit and other evidence demonstrating she cannot afford these costs, which she would not incur in a judicial forum.[3] As a result, Pérez has

---

1. The Handbook identifies the employer as "Hospitality First!" It is apparently undisputed by the parties that this is the same entity as Defendant HVD.

2. There is no question I have jurisdiction to resolve the threshold issue of whether valid and enforceable arbitration agreement exists.

*See Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 780 (10th Cir.1998).

3. This evidence indicates total arbitration costs in this matter are likely to exceed $15,000, and Pérez avers in her affidavit that she cannot afford the additional $7500.00 or more in arbitration costs that the arbitration agreement requires her to pay. *See* Pl.'s Resp.

demonstrated that the fee-splitting provision is likely to prevent her from vindicating her statutory rights by effectively barring her from the only forum available under the agreement.

In a further attempt to avoid a finding of unenforceability under *Shankle,* Defendants urge me to sever the offending fee-splitting provision from the arbitration agreement and enforce the remainder to compel arbitration of this matter. The alleged agreement does not, however, contain a severability or savings clause that allows me to enforce the agreement by striking unenforceable terms. *Compare Fuller v. Pep Boys–Manny, Moe & Jack of Del., Inc.,* 88 F.Supp.2d 1158, 1162 (D.Colo.2000) (relying on savings clause to strike fee-splitting provision and enforce remainder of arbitration agreement) *with Gourley v. Yellow Transp., LLC,* 178 F.Supp.2d 1196, 1204 (D.Colo.2001) (refusing to enforce arbitration agreement that included unenforceable fee-splitting provision because agreement did not contain severability or savings clause); *see also Shankle,* 163 F.3d at 1235 n. 6 (court lacks authority to redraft arbitration agreement to omit unambiguous fee-splitting provision).

Finally, Defendants offers to modify the arbitration agreement to require them to pay all arbitration costs, including the share Pérez is currently obligated to pay under the agreement. Pérez's arguments based on the existence of the fee-splitting provision make it clear she has not accepted this offer, and Defendants have not presented any evidence to the contrary.

█ Even if Defendants' offer to pay all arbitration costs was sufficient to overcome *Shankle*'s holding, as some courts have suggested, *see Phillips v. Associates*

*Home Equity Servs., Inc.,* 179 F.Supp.2d 840, 847 (N.D.Ill.2001); *Giordano v. Pep Boys–Manny, Moe & Jack, Inc.,* 2001 WL 484360 (E.D.Pa. Mar.29, 2001), the arbitration agreement would be unenforceable as a result of the unilateral right to modify the agreement that HVD reserved to itself in Section 1002 of the Handbook. As this court stated in a similar case:

> [Defendant] simultaneously attempts to bind the employee to the Arbitration Agreement as written, while withholding the power to interpret, modify, rescind, or supplement its terms unilaterally. Plaintiffs would be both irretrievably bound and at the Defendants' mercy, while Defendants are bound to nothing. Such terms in a contract render it illusory, as it binds one party without binding the other.

*Gourley,* 178 F.Supp.2d at 1202–03; *see also Diaz v. Arapahoe (Burt) Ford, Inc.,* 68 F.Supp.2d 1193, 1194 (D.Colo.1999) (employer may not select which representations and "agreements" in its employee manual are binding). Numerous other courts have held alleged arbitration agreements containing such unilateral terms illusory and therefore unenforceable. *See, e.g., Hooters of America v. Phillips,* 173 F.3d 933, 939–40 (4th Cir.1999); *Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 384 (S.D.N.Y.2002); *Dumais v. American Golf Corp.,* 150 F.Supp.2d 1182, 1193–94 (D.N.M.2001); *Trumbull v. Century Marketing Corp.,* 12 F.Supp.2d 683, 686 (N.D.Ohio 1998).

Defendants maintain this authority is of no effect here because the arbitration agreement set forth in Section 1004 of the Handbook is a distinct, separately executed agreement from the Handbook as a whole and hence is not subject to unilater-

---

in Opp. to Mot. to Compel. Exhs. 2, 4, 5. Defendants' contention that this statement and evidence are inadequate because the arbi-

tration might proceed before an allegedly less expensive non-AAA arbitrator is not supported by evidence and is unpersuasive in any event.

al revision as provided in Section 1002. As noted above, however, no representative of the Defendants executed the allegedly separate arbitration agreement. *See* HVD's Mot., Exh. A. In addition, Section 1002 of the Handbook, titled "Integration Clause and Right to Revise," states the Handbook contains "the entire employment policies and practices" of HVD then in effect, and makes no exception for the allegedly separate and distinct arbitration agreement set forth in the same chapter of the Handbook. Section 1002 further reserves to HVD the right to "revise, modify, delete or add to any and all policies [or] *procedures* . . . stated in this handbook or in any other document, except for the policy of at-will employment." (emphasis added). This provision's failure to except the Handbook's arbitration "agreement" from unilateral modification, especially given its express reservation of the employment-at-will policy from such modification, is further evidence that the alleged arbitration agreement was subject to unilateral modification under Section 1002. As a result, the arbitration "agreement" was unilateral rather than mutual and hence "no agreement at all." *See Gourley,* 178 F.Supp.2d at 1203.

For the reasons stated above, I find the alleged arbitration agreement set forth in Section 1004 of the Handbook unenforceable.[4] HVD's Motion to Compel Arbitration and to Stay Proceedings, joined by Bowie and Langdon, is therefore DENIED. Pursuant to Rule 12(a)(4), Defendants shall answer the Complaint in this action within 10 days of their receipt of this Order.

---

**4.** As a result of this decision, I need not address the additional bases Pérez puts forward for holding the arbitration agreement

unenforceable or her argument that the agreement does not encompass her claims against Bowie and Langdon.