Jesus **MARTINEZ** and Kanda Martinez, Plaintiffs–Appellants,

v.

**ANGEL EXPLORATION, LLC,** Defendant–Appellee.

No. 14–6086.

United States Court of Appeals, Tenth Circuit.

Aug. 4, 2015.

Rachel Bussett, Bussett Law Firm, P.C. (Jason C. Webster, The Webster Law Firm, Houston, TX, with her on the briefs), Oklahoma City, OK, for Appellants.

Timothy L. Martin (Michael L. Darrah with him on the brief), Durbin, Larimore & Bialick, Oklahoma City, OK, for Appellee.

Before TYMKOVICH, GORSUCH, and BACHARACH, Circuit Judges.

TYMKOVICH, Circuit Judge.

Jesus Martinez was working on a pump jack—the machinery that extracts oil or gas from a producing underground well site—when the sleeve of his sweatshirt became caught. As a result, Martinez's hand was pulled into the moving belts and his right thumb severed. The pump jack that injured Martinez, owned by Angel Exploration, was not protected by safety guarding, something Martinez contends was required at the time by federal regulations and industry standards. He alleges Angel was negligent in its failure to maintain its premises in a reasonably safe condition and, alternatively, that Angel intentionally created a condition certain to cause harm.

On Angel's motion, the district court granted summary judgment on the premises liability claim because, under Oklahoma law, landowners owe no duty as to open and obvious dangers and the unguarded pump jack was such a danger. The court also concluded that Martinez's intentional tort claim failed because no evidence in the record supported an inference that Angel acted with the knowledge that Martinez's injury was substantially certain to occur.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm summary judgment on the intentional tort claim, but vacate and remand on the premises liability claim.

While this case was pending on appeal, the Oklahoma Supreme Court recognized an exception to the open and obvious danger doctrine relied on by the district court. A determination that a condition is open and obvious may no longer be an absolute bar to liability if the landowner should have reasonably foreseen the injury to the plaintiff. *See Wood v. Mercedes–Benz,* 336 P.3d 457 (Okla.2014). Although we have no doubt the district court's judgment was correct at the time it was entered, we must remand for further proceedings in light of this opinion.

## I. Background

Angel owns and operates a number of wells in Oklahoma. The company outsources the day-to-day management and servicing of its wells to Smith Contract Pumping (SCP). SCP's employees, called "pumpers," check on the wells routinely. Pumpers make sure the engines are running, monitor output, and when necessary, tighten loose belts on the pump jack. But any needed repairs beyond SCP's responsibilities are handled by a second company, Natural Gas Specialists (NGS).

Martinez had been working as a pumper for SCP for three months when he arrived at one of Angel's wells—"Woodbury 2–2"—and found the engine was not running. Before that day, Martinez had been to Woodbury 2–2 between ten and twenty times, and on those occasions he had noticed that the pump jack was not covered by safety guards. He knew this because some of the other wells on his route had guarding. The process of restarting a well requires pumpers to be in close proximity to the belts, and in this case, to the unguarded belts. On the day of the accident,

Martinez successfully restarted Woodbury 2–2's engine and tightened the belts, which he had noticed were slipping. While he was waiting to be sure everything stayed in working order, he dropped a crescent wrench. As he bent down to get it, the sweatshirt he was wearing became caught in the belt and his thumb was severed. The thumb was later partially amputated.

Although Martinez received workers' compensation from SCP, he also sued Angel alleging that the lack of guarding was an unreasonably dangerous condition and that Angel was negligent in its failure to make a reasonable inspection of its property, to warn or take other precautions to protect Martinez, and to take action to reduce the risk posed by the dangerous condition.[1] During discovery, the owner of SCP testified that Angel relied on SCP to be its eyes and ears and report any needed repairs or adjustments to its wells. He also said that a lack of guarding was the type of thing SCP should report to Angel. But he also testified that SCP had no "books or classes or training" as to what guards should be used on a pump jack. Supp. App. 209. Nor did SCP provide its pumpers with any formal safety training. Angel's managing member similarly testified that the need for a guard is "something the pumpers and field people should know," *id.* at 202, but he also said that Angel never confirmed that SCP knew what was required by safety regulations, including a federal OSHA regulation requiring guarding on machinery. Martinez testified that although he was aware of the lack of guarding, he was never told it was necessary or that he should report it. And despite testimony from a NGS mechanic that there was no guarding on Woodbury

---

1. The Second Amended Complaint separately listed a claim for negligence and gross negligence against Angel. The district court properly considered Angel's liability under Oklahoma premises liability law and not under ordinary concepts of negligence. Martinez also sued NGS alleging negligence, but NGS is not a party on appeal.

2–2 as far back as 2003, there is no evidence in the record that this was ever reported to Angel.

Anticipating that his suit may be barred by the Oklahoma Workers' Compensation Act's exclusive remedy provision, Martinez's complaint alternatively alleged his case fell within the Act's intentional tort exception. As relief, he sought actual and punitive damages, and his wife brought derivative claims for loss of consortium and household services.

Angel moved for summary judgment on various grounds. The district court found the danger of the unguarded belt was open and obvious and therefore Angel had no duty to warn or otherwise remedy the condition. The court also found that, even if the Oklahoma Workers' Compensation Act applied, there was no genuine issue of material fact as to whether Angel acted with knowledge that Martinez's injury was substantially certain to occur. Finally, because both of Martinez's claims failed, the court entered summary judgment on his wife's claims because they were derivative of his.

## II. Analysis

Martinez argues the district court erred in granting summary judgment to Angel. We review a district court's grant of summary judgment de novo, and because this is a diversity case, "we ascertain and apply [Oklahoma] law such that we reach the result that would be reached by [an Oklahoma] court." *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 253 (10th Cir.1993).

### A. *Premises Liability*

Martinez asserts four grounds on which we should reverse the district court on the premises liability claim: (1) Angel's failure to comply with an OSHA regulation requiring safety guards constitutes negligence *per se*; (2) fact issues exist as to whether the unguarded belt was an open and obvious danger because circumstances existed distracting Martinez's attention; (3) competing inferences as to whether the unguarded belt had a deceptively innocent appearance and whether Martinez fully appreciated the danger posed preclude a finding that the belt was an open and obvious danger as a matter of law; and (4) even if the danger was open and obvious, a duty nonetheless exists because Angel should have anticipated the harm.

We conclude the first two arguments were not raised in the district court and are forfeited. We also reject the third argument and affirm the district court's finding that reasonable minds could not differ as to the open and obvious nature of the unguarded belt. We cannot dismiss the fourth argument, however, because Oklahoma now recognizes an exception to the open and obvious doctrine where the landowner should have reasonably foreseen the harm.

### 1. *Negligence* Per Se

■ Martinez first contends that the district court erred in failing to consider whether Angel's failure to comply with an OSHA regulation that makes guarding a general requirement for all machinery, *see* 29 C.F.R. § 1910.212(a)(1), was negligence *per se*. This theory was inadequately raised in the district court and is therefore forfeited on appeal.

The Second Amended Complaint alleged Angel was negligent, in part, for failing to comply with OSHA regulations, but the complaint never identified which regulations or gave any indication Martinez intended to proceed on a negligence *per se* theory. And we can hardly fault the district court for failing to discern a negligence *per se* argument. OSHA protections flow from employer to employee and

Martinez's negligence claims were expressly predicated on the assertion that Angel was *not* his employer. *See Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013) (requiring that a plaintiff "be one of the class intended to be protected by the statute" to establish negligence *per se*); *Marshall v. Hale–Halsell Co.*, 932 P.2d 1117, 1119 (Okla.1997) (rejecting claim that OSHA regulations set the duty owed by a premises owner to an invitee where the invitee was an independent contractor and not the defendant's employee because "the duties mandated by OSHA regulations flow from an employer to an employee"). Nor do general references to statutory or regulatory violations always signal a negligence *per se* argument. OSHA violations, for instance, may be cited as general evidence of negligence. *See Claborn v. Plains Cotton Coop. Ass'n*, 211 P.3d 915, 919 (Okla.Civ.App.2009) (citing *Orduna v. Total Constr. Servs., Inc.*, 271 Neb. 557, 713 N.W.2d 471, 478–79 (2006)) (noting that in a case brought by a non-employee third party OSHA violations may be considered as general evidence of negligence).

█ There was likewise no hint of a negligence *per se* argument in Martinez's response to Angel's no-duty argument on summary judgment.[2] We generally do not consider theories raised for the first time on appeal, and because Martinez makes no argument for how he can satisfy the plain error standard of review, we go no further.

*See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir.2011) ("[T]he failure to argue for plain error and its application on appeal[ ] surely marks the end of the road for an argument for reversal not first presented to the district court.").

### 2. The Open and Obvious Doctrine

#### a. Legal Background

█ Under Oklahoma law, all negligence claims require proof of a duty, a breach of that duty, and causation. *Scott v. Archon Grp., L.P.*, 191 P.3d 1207, 1211 (Okla.2008). The existence of a duty—a legal obligation to a third person—is a threshold question of law. *Id.* In a premises liability action, a landowner's duty varies according to the plaintiff's status on the land. *Sutherland v. Saint Francis Hosp. Inc.*, 595 P.2d 780, 781 (Okla.1979). With respect to invitees, like Martinez,[3] landowners must "exercis[e] reasonable care to keep the premises in a reasonably safe condition for the reception of the visitor." *Scott*, 191 P.3d at 1212. But the duty to keep the premises in a reasonably safe condition only extends "to conditions or defects in the nature of hidden dangers, traps, snares or pitfalls that are not known or readily observed by the invitee." *McKinney v. Harrington*, 855 P.2d 602, 604 (Okla.1993). It does not extend to "dangers which are so apparent and readily observable that one would reasonably expect them to be discovered." *Scott*, 191

---

**2.** When asked at oral argument where there is evidence in the record of a negligence *per se* argument below, Martinez referred the court to the "discussions of OSHA regulations throughout [his] primary briefing." Oral Argument at 4:01. Aside from references to OSHA in Martinez's statement of undisputed facts, which relate primarily to Angel's and SCP's lack of knowledge of OSHA regulations, Martinez's summary judgment response brief mentions OSHA one time and only then in the Statement of the Case. Supp.App. 137 ("According to the [OSHA] regulations ...

the well should have the proper guarding to prevent injuries such as Plaintiff's.").

**3.** Martinez and Angel agreed for purposes of summary judgment that Martinez was an invitee. In Oklahoma, "[a]n invitee is one who possesses an invitation to be upon the premises, express or implied." *McKinney v. Harrington*, 855 P.2d 602, 604 (Okla.1993). Trespassers and licensees are the other classes of entrants on land.

P.3d at 1212. In other words, a landowner has no duty to render safe an "open and obvious" danger. Thus, under long-standing Oklahoma law, a determination that "under similar or like circumstances an ordinary prudent person would have been able to see the defect in time to avoid being injured" was dispositive of a landowner's duty. *Id.*

■ That rule is now in doubt. Finding that the open and obvious danger doctrine is "not absolute," the Oklahoma Supreme Court recently concluded that even where an invitee is injured by an open and obvious condition, a landowner may still have a duty to warn of or otherwise protect the invitee from the dangerous condition if the injury suffered was reasonably foreseeable to the landowner. *Wood v. Mercedes–Benz,* 336 P.3d 457, 459–60 (Okla.2014). In *Wood,* the plaintiff was a catering employee who had been sent to a car dealership to assist with an event. The night before her arrival, the dealership's sprinklers activated in freezing temperatures, leaving a layer of ice on the grass, pavement, and sidewalks surrounding the dealership. The plaintiff testified that she saw the ice, was aware of the danger it posed, and knew to be very careful in navigating her way in and out of the dealership. Despite her caution, she slipped and was injured. Afterwards, an employee of the dealership told her that he should have put salt down when he got to work.

The Oklahoma Court of Civil Appeals held the dealership did not owe the plaintiff a duty because the ice was an open and obvious danger. The Supreme Court reversed. Finding the plaintiff's injury caused by the icy conditions was foreseeable, the court concluded the dealership had a duty to take remedial measures. In reaching this conclusion, the court emphasized the unique circumstances under which the plaintiff had encountered the open and obvious condition. The court explained,

> In the typical case, the invitee can protect herself by leaving the premises when an open and obvious hazard is encountered or by avoiding the premises altogether. In this case, neither of these choices was available to [the plaintiff]. She was not a customer of the dealership, but was present to fulfill her employer's contractual duty to provide service for an event sponsored by the dealer. [Plaintiff's] presence and exposure to the hazardous icy condition was compelled to further a purpose of the dealership.

*Id.* at 459 n. 6. And later, as the majority cautioned that its opinion "should not be construed as abrogating the open and obvious defense in all cases," it again reasoned that "[t]he icy condition is not dispositive of Mercedes–Benz' duty *in this case* because Wood was required to cross the hazardous condition in furtherance of her employment." *Id.* at 460 n. 8 (emphasis added). That is different than "a random customer appearing at the dealership" because the dealership "knew that employees of Ned's Catering would be arriving and would be required to enter the building." *Id.*

Four justices dissented from the court's holding, saying the new exception announced by the majority "ignore[d] ... long-standing laws regarding the open-and-obvious doctrine and the duty in a premises-liability action." *Id.* at 461 (Taylor, J., dissenting). That seems correct. *Wood* appears to represent a significant shift in Oklahoma premises liability law. Before *Wood,* the Oklahoma Supreme Court had consistently rejected attempts by plaintiffs to merge ordinary negligence principles with the common law of premises liability. *See, e.g., Scott,* 191 P.3d at 1213 ("We are not persuaded by plaintiffs'

attempt to change a landowner's duty to an invitee with respect to open and obvious dangers by characterizing the issue as one of ordinary negligence and urging application of concepts of ordinary negligence."); *Sutherland,* 595 P.2d at 781; *see also Gobble v. Chesapeake Energy Corp.,* 311 P.3d 454, 457 (Okla.Civ.App.2013) (rejecting plaintiff's foreseeability argument in a pre-*Wood* decision because "[d]efining a duty based on foreseeability is a principle of general negligence which does not govern when the harm occurs on the premises of others").

But a review of the legal literature also reveals that *Wood* aligns Oklahoma with an emerging majority of states to reconsider the open and obvious doctrine. Although *Wood* does not cite the Restatement, many states have adopted the Second Restatement's formulation of the doctrine. As the Restatement puts it, "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" Restatement (Second) of Torts § 343A(1) (1965) (emphasis added); *see also Michalski v. Home Depot, Inc.,* 225 F.3d 113, 119 (2d Cir.2000) (calling it the "clear trend" among states to "reject[ ] the traditional [open and obvious] rule that had provided a full defense to landowners subject to premises liability"); Dan B. Dobbs et al., Dobbs' Law of Torts § 276 ·(2d ed. 2014) ("In recent years, this view has commanded substantial acceptance where it has been expressly considered.").

Historically, the rule at common law and reflected in the First Restatement was consistent with Oklahoma's pre-*Wood* ju-

risprudence: no landowner liability for an injury caused by a dangerous condition if the entrant knew of the condition and realized the risk posed by the condition—no exceptions. *See* Restatement (First) of Torts § 340 (1934); *see also* Dobbs, *supra,* § 276; 5 Fowler V. Harper et al., Harper, James and Gray on Torts § 27.13, at 277 n. 29 (3d ed. 2008). But this absolute bar to liability came under fire in the 1950s as courts and commentators reconsidered tort law in light of modern economic conditions and the rise of premises liability insurance. *See* Harper, *supra,* § 27.13, at 279 ("[T]he orthodox theory had become a pretty feeble reed for defendants to lean on by the time of the second Restatement."); *see, e.g.,* Fleming James, Jr., *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees,* 63 Yale L.J. 605, 628 (1954) ("The Restatement view is wrong in policy."); Page Keeton, *Personal Injuries Resulting from Open and Obvious Conditions,* 100 U. Pa. L.Rev. 629, 642–43 (1952). To soften the rule, the Second Restatement created an exception allowing liability where a landowner should anticipate the harm despite the open and obvious nature of the condition.[4] *See* W. Page Keeton, Prosser and Keeton on the Law of Torts § 61, at 427 (5th ed. 1984) ("In any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required.").

 A comment to Section 343A of the Second Restatement provides two examples of when this exception might apply. First, a duty may extend "where the possessor has reason to expect that the invi-

---

4. The Third Restatement follows the Second, "except it extends this rule not only to invi-

tees but to all entrants onto land, except non-flagrant trespassers." Dobbs, *supra,* § 276.

tee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A cmt. f. Oklahoma previously recognized this principle, but incorporates it at the first step of the analysis in determining whether a condition is open and obvious. Oklahoma courts say an otherwise observable condition may be considered a hidden or latent condition because of the presence of "circumstances diverting the plaintiff's attention." *Sholer v. ERC Mgmt. Grp., LLC,* 256 P.3d 38, 43 (Okla.2011); *see also Roper v. Mercy Health Ctr.,* 903 P.2d 314, 314–15 (Okla. 1995); *Spirgis v. Circle K Stores, Inc.,* 743 P.2d 682, 685 (Okla.Civ.App.1987).

The second circumstance extending duty is "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A cmt. f. The illustration of this circumstance provides:

A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

*Id.* cmt. f, illus. 5; *see also* Dobbs, *supra,* § 276 (explaining that landowners may foresee that the invitee will encounter the obvious danger because "the plaintiff must take the risk to fulfill an obligation or to carry out employment obligations"); W. Page Keeton, Prosser and Keeton on the Law of Torts § 61, at 69 (5th ed. Supp. 1988) ("Nor may the obvious danger bar recovery where the invitee is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job."). Notably, this is the same reasoning the *Wood* court employed to take the otherwise obvious danger of the ice out of the general no-duty category of open and obvious dangers.

In sum, after *Wood,* the open and obvious doctrine is no longer a complete bar to liability in Oklahoma. A landowner's duty to keep the premises in a reasonably safe condition for invitees extends to both latent dangers and at least some obvious dangers with foreseeable harms to a class of visitors required to be on the premises.

With this framework in mind, we turn to Martinez's arguments regarding the open and obvious doctrine.

### b. *Application of* Wood

■ We have no doubt that the district court was correct under then-existing Oklahoma law to stop its analysis of Angel's duty after determining Martinez was injured by an open and obvious condition. But we must now consider how *Wood* changes that determination.[5] Martinez

---

5. We must apply the state law in effect at the time of our decision even if the district court's decision was correct when entered. *See Vandenbark v. Owens–Illinois Glass Co.,* 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327 (1941) ("[T]he dominant principle is that nisi prius and appellate tribunals alike should conform their orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judg-

ments which were correct when entered."); *Jones v. Hess,* 681 F.2d 688, 695 n. 9 (10th Cir.1982) ("Generally an appellate court must apply the law in effect at the time it renders its decision where a change in law occurs while a case is on direct appeal, although there may well be an exception to this rule to prevent manifest injustice."); 19 Wright & Miller, Federal Practice & Procedure § 4507 (2d ed.). There is no prejudice to Angel in

contends Angel should have anticipated the harm from an unguarded pump jack and thus owed him a duty to warn or otherwise remedy the danger in spite of the fact that it was open and obvious.

▪ The reach of Oklahoma's newly recognized exception to the open and obvious doctrine is yet to be determined, but it clearly applies in situations like *Wood* where a business invitee is "present to fulfill [his or] her employer's contractual duty to provide service," the invitee's "presence and exposure to the hazardous . . . condition was compelled to further a purpose of the [defendant]," and the invitee was "required" to encounter "the hazardous condition in furtherance of [his or] her employment." 336 P.3d at 459 n. 6, 460 n. 8; *cf. Weaver v. Celebration Station Props., Inc.*, No. H–14–2233, 2015 WL 1932030, at \*5 (S.D.Tex. Apr. 28, 2015) (finding *Wood* inapplicable where the plaintiff "was under no obligation to expose herself" to the danger). Viewing the evidence in the light most favorable to Martinez, we see no way to distinguish the *Wood* plaintiff's position with respect to the open and obvious icy condition from Martinez's with respect to the open and obvious unguarded pump jack.

For instance, evidence in the record supports the proposition that to do his job as a pumper, Martinez had to be in and around the unguarded pump jack. In his deposition, SCP's owner agreed that regardless of whether or not Martinez ever dropped his wrench, his job responsibilities required that he put his hands near the pulley system to restart an engine. An NGS mechanic also testified that to restart a well a pumper must work close to pinch points. Martinez also provided an affidavit from an expert stating that it was

"foreseeable that people would be working around the nip points and belts on the Woodbury 2–2 well." App. 257.

But a wrinkle remains. A distinction between *Wood* and this case is that the dealership had *actual notice* of the icy condition before the caterer was injured; here, Martinez has conceded that there is no evidence that Angel had actual notice of the lack of guarding. *See* Oral Argument at 5:28. And the *Wood* majority listed the fact of the dealership's prior notice before concluding the injury was foreseeable:

> We agree with Wood that under the peculiar facts of this case, Mercedes–Benz owed a duty to take remedial measures to protect her from the icy conditions surrounding the entry to its facility. The accumulation of ice throughout Mercedes–Benz' facility was caused by the activation of the dealership's sprinkler system during freezing temperatures; not by a natural condition. *The dealership had notice of the icy conditions surrounding the entire building* and knew that Ned's Catering was sending its employees to the facility to cater the business' scheduled event. *As such, it was foreseeable* that Ned's Catering employees would encounter the icy hazards created by the sprinkler system and would likely proceed through the dangerous condition in furtherance of their employment.

336 P.3d at 460 (emphases added). One might argue that Martinez's case falls outside of the exception crafted in *Wood* because there was no actual notice. But doing so would require us to reconcile Oklahoma premises liability law on the notice required to hold a landowner liable to an invitee.

our consideration of *Wood*. Angel had notice of the decision from Martinez's citation in his reply brief, and a significant portion of An-

gel's oral argument time was devoted to discerning its position on *Wood's* potential impact.

As a general matter, at least prior to *Wood* and outside the context of open and obvious hazards, Oklahoma landowners are not liable to an invitee injured by a dangerous condition on the premises absent prior notice of the condition. Notably, however, a landowner has a duty as to an invitee not only with respect to those conditions of which he has actual notice, but also those that, by the exercise of reasonable care, he should discover. *See McKinney*, 855 P.2d at 605 ("[C]ourts will not impose upon a landowner the duty to warn a business invitee of a hidden danger when there is no evidence that the landowner knew *or should have known* of the danger." (emphasis added)); *see also Phelps v. Hotel Mgmt., Inc.*, 925 P.2d 891, 893 n. 1 (Okla.1996); *Taylor v. Hynson*, 856 P.2d 278, 281 (Okla.1993); *Rogers v. Hennessee*, 602 P.2d 1033, 1035 n. 10 (Okla.1979) ("Duty could evolve here, only from notice, actual or imputed."); Restatement (Second) of Torts § 343 (1965) (stating that "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he ... knows *or by the exercise of reasonable care would discover the condition*" (emphasis added)); Glen Weissen-berger et al., The Law of Premises Liability § 4.05[2], at 4–54 (4th ed. 2014) ("The invitee ... need establish only that the exercise of due care would have led the possessor to discover the hazard.").

For this reason, as to invitees, landowners are said to have "the affirmative duty of care to discover conditions of the premises that may be unreasonably dangerous for the invitee." Restatement (Second) of Torts § 343 cmt. b; *see also Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079, 1083 (Okla.1997) ("To an invitee, an owner owes the *additional duty* of exercising reasonable care to keep the premises in a reasonably safe condition for the reception of the visitor." (emphasis added) (footnote omitted)); Harper, *supra*, § 27.12, at 256; Keeton, *supra*, § 61, at 426 (stating that the occupier must "act reasonably to inspect the premises to discover possible dangerous conditions of which he does not know").[6] So while the notice in *Wood* was essential to finding a duty existed there, as in any premises liability action, it is unclear whether the lack of *actual* notice in this case is dispositive in determining whether this newly recognized exception to the open and obvious doctrine applies.[7] We may still have

---

**6.** By contrast, as "[t]o a licensee [such as a social guest], an owner owes a duty to exercise reasonable care to disclose to him the existence of dangerous defects *known to the owner*, but unlikely to be discovered by the licensee." *Scott*, 191 P.3d at 1211 (emphasis added) (quoting *Pickens*, 951 P.2d at 1083); *see also* Keeton, *supra*, § 60, at 417 ("As to passive conditions on the land, it is still the settled rule that the possessor is under no obligation to the licensee with respect to anything that the possessor does not know. He is not required to inspect his land for unknown dangers, nor, of course, to disclose their existence or take special precautions against them.").

**7.** The *Wood* majority extracted the language for its exception to the open and obvious doctrine from *Brown v. Alliance Real Estate Group*, 976 P.2d 1043 (Okla.1999). A close reading of *Brown* supports the *Wood* dissent's criticism of the majority opinion. That is, the majority lifted the foreseeability language from *Brown* and used it acontextually to support a new rule. *See Wood*, 336 P.3d at 466 (Combs, J., dissenting).

Although *Brown* dealt with icy conditions, unlike the icy conditions in *Wood* and the pump jack here, the danger was not open and obvious. The *Brown* court concluded summary judgment on duty was inappropriate because the danger was hidden and the premises owner was on notice of the hidden danger. Only after deciding that the danger was not open and obvious did the court go on to say what has now become the exception to the open and obvious doctrine, "a premises owner does have a duty to exercise ordinary

to consider whether Angel was on constructive notice of, or whether by the exercise of due care, would have discovered, the lack of guarding. That is not a question we could answer on the summary judgment record before us.

Martinez's complaint is suggestive, however. It alleges both that Angel was on constructive notice of the lack of guarding and that Angel was negligent in its failure to conduct a reasonable inspection of its property to discover dangerous conditions of which it did not know. And nothing in the record suggests it would have been infeasible or prohibitively costly for Angel to inspect the well or that the defect would not have been discovered upon inspection. As Angel points out, the lack of guarding would have been obvious to anyone looking at the pump jack. See Smedsrud v. Powell, 61 P.3d 891, 900 n. 42 (Okla.2002) ("The open-and-obvious defect defense presupposes that quantum of advance notice to the owner/occupier which is generally shared in common with the public."). Moreover, some of Angel's other wells did have safety guarding at the time of the accident, and there was testimony that the Woodbury 2–2 pump jack lacked guarding as far back as 2003.

▮▮▮▮ Nor does the fact that Angel relied on SCP and NGS to report needed repairs on its wells and that neither company reported the lack of guarding to Angel resolve the issue. The general rule is that liability cannot be imposed on a land-owner for injuries caused by the negligence of independent contractors. But an exception arises where a landowner attempts to delegate the duty to keep the premises in a reasonably safe condition.[8] See Thomas v. E–Z Mart Stores, Inc., 102 P.3d 133, 137 (Okla.2004); Copeland v. Lodge Enters., Inc., 4 P.3d 695, 700 (Okla. 2000). Under Oklahoma law, that duty is non-delegable and "the occupier will be liable for the negligence of an independent contractor to whom he entrusts maintenance and repair." Thomas, 102 P.3d at 137 (quoting William L. Prosser, Law of Torts § 61, at 395 (4th ed. 1971) and collecting cases); see also Keeton, supra, § 71, at 511–12; Weissenberger, supra, § 4.07[2], at 4–65 to 4–66.

This is all to say that Angel's lack of actual notice might be an insufficient ground on which to distinguish Wood and affirm the district court's no-duty holding. Because (1) Martinez was required to encounter the unguarded belt as part of his job responsibilities, (2) Angel knew SCP's pumpers would be working on the well, and (3) evidence suggests that by the exercise of ordinary care, Angel would have known of the dangerous condition, the exception recognized in Wood might still apply.

In the end, we do not resolve this question here. Given the posture of this case, we conclude it better for the parties on remand to brief and argue the scope of

care to prevent injury to another whenever the circumstances are such that the owner, as an ordinary prudent person, could reasonably foresee that another will be in danger of injury as a probable consequence of the owner's actions." Brown, 976 P.2d at 1045 (footnote omitted).

One way to reconcile the Wood majority's reference to notice is that it also comes from Brown. But Brown is not useful in determining the reach of this new exception to the open and obvious doctrine because, as we have just discussed, Brown did not recognize the exception attributed to it by the Wood majority.

8. This, of course, assumes NGS and SCP were independent contractors, rather than employees of Angel whose knowledge of the condition may be imputed to Angel. At the time of Martinez's injury, there were no contracts in place governing the relationship between Angel and SCP or Angel and NGS.

*Wood* and how Oklahoma courts might resolve the notice question. Absent a finding that summary judgment is appropriate for this or other reasons,[9] it will be for a jury to decide whether Angel should have anticipated the injury in spite of the open and obvious nature of the danger.

### c. Remaining Open and Obvious Arguments

While we must remand because of the intervention of *Wood,* two other arguments raised by Martinez can be quickly rejected. He contends both arguments establish the district court erred in concluding as a matter of law that the unguarded pump jack was an open and obvious danger.

■ First, he argues that the district court was wrong to conclude the unguarded belt was an open and obvious danger because the distraction caused by dropping the wrench created a fact issue as to whether, under the circumstances, the condition was open and obvious. We find this theory forfeited.

Martinez's argument below was that the unguarded belt was not open and obvious because Martinez could not fully appreciate the danger posed and thus it presented a deceptively innocent appearance. Although his summary judgment brief included a block quote from an Oklahoma Supreme Court opinion that referenced the availability of a distraction argument, Martinez did not go on to develop such an argument. Nor does our review of the summary judgment record reveal any evidence or testimony suggesting that Martinez was distracted by the falling wrench or that it was foreseeable that dropping a

tool would divert his attention or prevent him from seeing the danger. This conclusion is confirmed by the fact that the only record cite in Martinez's brief on appeal is to the portion of his affidavit recounting the dropping of the wrench. While Martinez characterizes the affidavit as "evidence of a predictable distraction," Aplt. Br. at 23, there is no assertion in the affidavit that he was distracted.

In the absence of an argument for plain error, we decline to reach this newly raised theory.

■ Martinez did raise, and the district court rejected, his second argument that the unguarded belt presented a deceptively innocent appearance. He contends that he "knew that an unguarded pulley and belt posed a hazard, [but] the mechanism by which he was injured was not open and obvious" and therefore the question of whether it was open and obvious was for a jury to decide. *Id.* at 21. The distinction he asks us to draw is between the obvious danger of sticking one's hand in the belt and the allegedly hidden danger of being pulled into the belt.

■ While conflicting inferences as to whether a plaintiff had a full appreciation of the risk at the time of injury can preclude summary judgment, *see Jack Healey Linen Serv. Co. v. Travis,* 434 P.2d 924, 927 (Okla.1967), the evidence here does not support the inference that the unguarded belt had a deceptively innocent appearance that cloaked the reality of danger or that Martinez did not appreciate the extent of the danger posed. Martinez testified that the accident happened during daylight

---

9. Angel moved for summary judgment on six grounds: (1) Angel owed no duty as to an open and obvious danger on its premises; (2) Martinez assumed the risk; (3) the suit is barred by the doctrine of election of remedies; (4) Martinez's sole and exclusive remedy is workers' compensation; (5) the evidence does not establish an intentional tort; and (6) there is no support for a claim of punitive damages. The district court only reached the first and fifth issues.

hours on a sunny and dry day; there was nothing interfering with his ability to observe the equipment; there was nothing hidden in the way the equipment was set up; the lack of a guarding was obvious and would have been obvious to anyone; he knew from looking at it that it posed a danger; and he knew not to stick his fingers in the pulley where they could get caught, Supp.App. 112 ("Yeah, I love my life."); *id.* at 118 (referring to it as "common sense"). And fatal to his argument is his testimony that he knew one should not stand too close to the pulley because clothes or body parts could become caught. That is precisely the danger that resulted in his thumb being severed.

Accordingly, we affirm the district court's finding that reasonable minds could not differ as to the open and obvious nature of the unguarded machinery.

### B. Workers' Compensation

Finally, Martinez resists Angel's contention that, at the time of his injury, he was a statutory employee of Angel whose exclusive remedy is workers' compensation. He argues that even if Angel is right, he falls within the exception to the exclusive remedy rule because his injury was not the result of an accident, but instead of an intentional tort. The district court rejected this alternative theory of liability.

Oklahoma workers' compensation law has undergone several significant legislative overhauls in recent years, but the parties agree that the issue of whether Angel's conduct amounted to an intentional tort is governed by the Oklahoma Supreme Court's decision in *Parret v. UNICO Service Company,* 127 P.3d 572 (Okla. 2005), *superseded by statute,* Okla. Stat. tit. 85, § 302 (2011). *Parret* instructed that "[i]n order for an employer's conduct to amount to an intentional tort, the employer must have (1) desired to bring about the worker's injury or (2) acted with the knowledge that such injury was substantially certain to result from the employer's conduct." *Id.* at 579. It is the second substantial certainty prong on which Martinez relies.

We have previously said:

Under the ... substantial certainty test, the employer must have intended the act that caused the injury with knowledge that the injury was substantially certain to follow. More than knowledge and appreciation of the risk is necessary. Even recklessness or wantonness is not enough. There must be more than knowledge of foreseeable risk, high probability, or substantial likelihood; there must be knowledge of the substantial certainty of injury.

*Monge v. RG Petro–Mach. (Grp.) Co. Ltd.,* 701 F.3d 598, 605 (10th Cir.2012) (internal quotations, citations, and alterations omitted) (quoting *Parret,* 127 P.3d at 579); *see also Price v. Howard,* 236 P.3d 82, 90 (Okla.2010).

After a careful review of the summary judgment record and for the reasons explained by the district court, we agree that the record is bare of any evidence suggesting Angel had knowledge of a substantial certainty of injury to Martinez. Accordingly, we affirm the grant of summary judgment to Angel on Martinez's intentional tort theory.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on Martinez's *Parret* claim, but VACATE the grant of summary judgment on the premises liability claim and REMAND for reconsideration in light of *Wood.*