FILED
United States Court of Appeals
Tenth Circuit

January 5, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

RHONDA NESBITT, individually, and on behalf of all others similarly situated,

     Plaintiff-Appellee,

v.

FCNH, INC.; VIRGINIA MASSAGE THERAPY, INC.; MID-ATLANTIC MASSAGE THERAPY, INC.; STEINER EDUCATION GROUP, INC.; STEINER LEISURE LTD.; SEG CORT LLC, d/b/a "Steiner Education Group",

     Defendants-Appellants.

------------------

SECRETARY OF LABOR; EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Amici Curiae.

No. 14-1502

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:14-CV-00990-RBJ)

Todd D. Wozniak, of Greenberg Traurig, LLP, Atlanta, Georgia (Jeffrey M. Lippa of Greenberg Traurig, LLP, Denver, Colorado; and Scott D. Segal of Law Offices of Scott D. Segal PA, Miami, Florida, with him on the briefs), for Defendants-Appellants.

David H. Miller (Rachel Graves with him on the brief), of Sawaya & Miller Law Firm, Denver, Colorado, for Plaintiff-Appellee.

Sarah J. Starrett, Office of the Solicitor, Washington, D.C. (P. David Lopez, General Counsel, Washington, D.C.; Carolyn L. Wheeler, Acting Associate General Counsel, Washington, D.C.; Lorraine C. Davis, Assistant General Counsel, Washington, D.C.; Julie L. Gantz, U.S. Equal Employment Opportunity Commission; Washington, D.C.; M. Patricia Smith, Solicitor of Labor, Washington, D.C.; Jennifer S. Brand, Associate Solicitor, Washington, D.C.; Paul L. Frieden, Counsel for Appellate Litigation, Washington, D.C.; Jesse Z. Grauman, U.S. Department of Labor, Office of the Solicitor, Washington, D.C., on the briefs), for Amici Curiae.

---

Before **BRISCOE, LUCERO** and **McHUGH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiff Rhonda Nesbitt filed this action claiming that defendants FCNH, Inc., Virginia Massage Therapy, Inc., Mid-Atlantic Massage Therapy, Inc., Steiner Education Group, Inc., Steiner Leisure Ltd., and SEG CORT LLC (collectively Defendants) violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and various Colorado wage and hour laws by requiring her and other students at the massage therapy school in which she was enrolled to provide massage therapy services to clients without pay. Defendants moved to stay the proceedings and compel arbitration, citing a paragraph in Nesbitt's written enrollment agreement entitled "Arbitration Agreement." The district court denied Defendants' motion. Defendants now appeal. Exercising

2

jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(C), we affirm.

I

*The parties*

Defendants own and operate approximately thirty-one for-profit occupational schools throughout the United States that provide education in massage therapy and/or esthetics. Each school also provides personal services, including massage therapy and esthetics, to the public for fees that are typically lower than charged elsewhere in the community. Such services are performed by students of the schools. Although the schools are paid by the public for the services provided, the schools do not compensate their students for the labor performed.

Plaintiff Nesbitt, a resident of Denver, Colorado, enrolled in one of Defendants' schools: the Denver School of Massage Therapy (the School). As a student at the School, Nesbitt was required to provide massage therapy services to the public without compensation.

*The Arbitration Agreement*

At the time of her enrollment, Nesbitt executed a written Enrollment Agreement that outlined the terms and conditions of her enrollment in the School. Included in the Enrollment Agreement, under a section entitled "STUDENT ACKNOWLEDGMENTS," was the following paragraph:

3

**Arbitration Agreement**

You, the student, and Steiner Education Group ("SEG") agree that any dispute or claim between you and SEG (or any company affiliated with SEG or any of its or SEG's officers, directors, employees or agents) arising out of or relating to (i) this Enrollment Agreement, or the Student's recruitment, enrollment or attendance at SEG, (2) the education provided by SEG, (3) SEG's billing, financial aid, financing options, disbursement of funds or career service assistance, (4) the enforceability, existence, scope or validity of this Arbitration Agreement, or (5) any claim relating in any manner, to any act or omission regarding Student's relationship with SEG or SEG's employees, whether such dispute arises before, during or after Student's attendance at SEG, and whether the dispute is based on contract, statute, tort, or otherwise, shall be resolved through binding arbitration pursuant to this Section (the "Arbitration Agreement"). Arbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association applying federal law to the fullest extent possible, and the substantive and procedural provisions of the Federal Arbitration Act (9 U.S.C. §§1-16) shall govern this Arbitration Agreement and any and all issues relating to the enforcement of the Arbitration Agreement and the arbitrability of claims between the parties. Judgment upon the award rendered by the Arbitrator may be entered in any court having competent jurisdiction. There shall be no right or authority for any claims within the scope of this Arbitration Agreement to be arbitrated or litigated on a class basis, or for the claims of more than one Student to be arbitrated or litigated jointly or consolidated with any other Student's claims. Each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs. THIS ARBITRATION AGREEMENT LIMITS CERTAIN RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO PARTICIPATE IN ANY FORM OF CLASS OR JOINT CLAIM, THE RIGHT TO ENGAGE IN DISCOVERY (EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES), AND THE RIGHT TO CERTAIN REMEDIES AND FORMS OF RELIEF. OTHER RIGHTS THAT YOU OR SEG WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION. RIGHT TO REJECT: I may reject this Arbitration Agreement by mailing a signed rejection notice to: Attention: Steiner Education Group

Corporate Office, Compliance Department, 2001 W Sample Road, Ste. 318, Pompano Beach, FL 33064 within 30 days after the date I sign this Enrollment Agreement. Any rejection notice must include my name, address, telephone number.

Aplt. App. at 83.

*The filing of this action*

Nesbitt filed this purported class action against Defendants on April 7, 2014. The complaint alleged, in pertinent part, that Nesbitt and other students at Defendants' schools were effectively acting as employees of Defendants in providing services to the public and, as such, were entitled under the FLSA and the wage and hours laws of each state in which the schools operated to minimum wages and/or overtime wages. The complaint also alleged that the arbitration paragraph of the Enrollment Agreement signed by Nesbitt and other students violated the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq.

*Defendants' motion to compel arbitration*

Defendants moved the district court to stay the proceedings and compel Nesbitt to arbitrate her individual claims against Defendants. In support, Defendants cited the arbitration paragraph of the Enrollment Agreement (hereinafter Arbitration Agreement) that Nesbitt signed when she enrolled in the School. Defendants also argued that allowing Nesbitt to proceed with her court action would contravene the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16.

The district court denied Defendants' motion. In doing so, the district court

5

agreed with Defendants that the Arbitration Agreement "[wa]s not procedurally unconscionable." Aplt. App. at 146. The district court reasoned that "[w]hile the contract was certainly one of adhesion, . . . Nesbitt was provided an opportunity to read the provision before signing it; notice of a variety of waivers was included in capitalized letters and in the same font size and typeface as the rest of the enrollment form sections; and . . . Nesbitt was given the opportunity to opt out of the provision if she so chose." Id. "Furthermore," the district court noted, "while she may not have had an opportunity to become familiar with the document on the date she signed it, she had thirty days to familiarize herself with its terms and opt out after enrolling." Id.

But the district court agreed with Nesbitt that two provisions of the Arbitration Agreement—the provision requiring arbitration to be conducted in accordance with the Commercial Rules of the American Arbitration Association and the provision requiring each party to bear its own expenses—effectively deprived her of her rights under the FLSA. More specifically, the district court concluded that "the application of the Commercial Rules and their fee splitting provisions, along with the condition that . . . Nesbitt bear [her own] costs . . . , would effectively preclude [her] from pursuing her claims." Id. at 150–51. In reaching this conclusion, the district court accepted Nesbitt's estimate that "she w[ould] likely incur between $2,320.50 and $12,487.50 in costs simply paying for the arbitrator's time," id. at 148, and it noted her "affidavit establishing that she

6

[could not] afford the costs of proceeding under the Commercial Rules," id. at 149. The district court also concluded that requiring Nesbitt "to bear the costs of her own counsel even should she prevail" violated public policy because it amounted "to a prospective waiver of a statutory remedy while simultaneously undermining the enforcement scheme erected by the FLSA." Id. at 150.

Finally, the district court concluded that because the Arbitration Agreement contained "no savings clause and . . . [wa]s unambiguous," the two unenforceable provisions could not "be stricken, rendering the entire Arbitration Agreement unenforceable." Id.

## II

On appeal, Defendants challenge the district court's denial of their motion to stay the proceedings and compel arbitration.[1] "We review de novo . . . the district court's denial of a motion to compel arbitration." Sanchez v. Nitro-Lift Tech., 762 F.3d 1139, 1145 (10th Cir. 2014). "This review requires us to evaluate whether the district court correctly found that no valid and enforceable agreement

---

[1] The FAA "allows an interlocutory appeal from an order denying a motion to compel arbitration under 9 U.S.C. § 4." Int'l Bhd. of Elec. Workers, Local #111 v. Pub. Serv. Co. of Colo., 773 F.3d 1100, 1104–05 (10th Cir. 2014); see Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 394 n.5 (2d Cir. 2015) (exercising jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(C) over district court's order denying defendant's motion to compel arbitration); 15B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3914.17, at 12 (2d ed. 1992) ("Appeal is expressly permitted [by § 16 of the FAA] from orders that deny petitions or applications to order or compel arbitration . . . .").

7

to arbitrate the parties' dispute exists." Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998).

*Section 2 of the FAA*

It is undisputed that this case is governed by the FAA. Section 2 of the FAA, described by the Supreme Court as the "primary substantive provision of the Act," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), provides in pertinent part that

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court "ha[s] described [§ 2] as reflecting both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted) (first quoting Moses H. Cone, 460 U.S. at 24, then quoting Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Id. (citations omitted).

That said, "[t]he final phrase of § 2," often referred to as the "saving clause," "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not

8

by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

*The effective vindication exception to the FAA*

Federal courts have recognized what is referred to as "[t]he 'effective vindication' exception" to the FAA. Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2310 (2013). This exception "originated as dictum in Mitsubishi Motors [Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)], where [the Supreme Court] expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies.'" Id. (quoting Mitsubishi Motors, 473 U.S. at 637 n.19 (emphasis added in Am. Express)). The Supreme Court recently acknowledged that this exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." Id. at 2310–11.

In Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230, 1233–35 (10th Cir. 1999), we applied the effective vindication exception to invalidate a "mandatory arbitration agreement, which [wa]s entered into as a condition of continued employment, and which require[d] [the] employee to pay a portion of the arbitrator's fees." In doing so, we acknowledged the FAA's "presumption in

9

favor of enforcing agreements to arbitrate—even where those agreements cover statutory claims." Id. at 1234. But we concluded that this presumption falters "if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights." Id. Consequently, we held, "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." Id. We then noted that the arbitration agreement before us required the plaintiff/employee to pay for half of the arbitrator's fees, which would have totaled between $1,875 and $5,000, and that the plaintiff/employee "could not afford such a fee." Id. We concluded that this "placed [the plaintiff/employee] between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum." Id. at 1235. Consequently, we affirmed the district court's refusal to compel arbitration of the plaintiff/employee's claims.

*Did Nesbitt fail to meet her burden on the effective vindication issue?*

Defendants, citing the Supreme Court's decision in Green Tree Fin. Corp.- Alabama v. Randolph, 531 U.S. 79 (2000), argue that Nesbitt "failed to satisfy her burden" of showing that "arbitration would be prohibitively expensive." Aplt. Br. at 18. Green Tree, which was issued slightly less than two years after our decision in Shankle, addressed the question of whether an arbitration agreement

10

was "unenforceable because it sa[id] nothing about the costs of arbitration, and thus fail[ed] to provide [the plaintiff] protection from potentially substantial costs of pursuing her federal statutory claims [under the Truth in Lending Act and the Equal Credit Opportunity Act] in the arbitral forum." 531 U.S. at 89. The Court acknowledged that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." Id. at 90. "But the record" before it, the Court noted, did "not show that [the plaintiff] w[ould] bear such costs if she [went] to arbitration." Id. Indeed, the Court noted, "[t]he record reveal[ed] only the arbitration agreement's silence on the subject, and that fact alone," the Court stated, "[wa]s plainly insufficient to render it unenforceable." Id. at 91. The Court emphasized that the party "seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Id. at 92. The Court did not, however, reach the question of "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence." Id.

Defendants argue that Nesbitt did not, as required by Green Tree, meet her burden on the effective vindication issue for the simple reason that she "could have opted out of the arbitration clause altogether and still enrolled in school." Aplt. Br. at 18. "Opting out," they argue, "would have eliminated any dispute

11

regarding the cost of arbitration." Id.

We conclude, however, that this argument is at odds with the decision in Green Tree. In Green Tree, the Court stated that, "[i]n determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." 531 U.S. at 90. The Court then separately addressed the effective vindication exception, suggesting that this exception stands apart from the issue of whether the parties voluntarily agreed to submit their claims to arbitration. In other words, we read Green Tree as implying that the effective vindication exception can apply even in situations where both parties voluntarily agreed, at the outset of their relationship, to arbitrate any claims that might arise between them. Under this framework, the availability of an opt-out clause is thus relevant only to the threshold question of "whether the parties agreed to submit their claims to arbitration," id., and does not impact the availability of the effective vindication exception. Consequently, we reject the Defendants' assertion that the availability for Nesbitt to opt out of the Arbitration Agreement now prevents her from invoking the effective vindication exception.

Defendants also argue that Nesbitt failed to satisfy her burden on the effective vindication issue because she did not "pursue the possibility of deferred or reduced [arbitration] fees." Aplt. Br. at 18. Indeed, Defendants argue, the

12

American Arbitration Association's Commercial Rules include "fee-waiving capabilities for parties in financial need." Id. at 26–27. As a result, they argue, "there is no way to determine what costs she actually would have incurred in arbitration." Id. at 18.

The problem with this argument, as Nesbitt convincingly notes, is that "being at the mercy" of the arbitrator's "discretion" as to whether to defer or reduce her share of the arbitration fees "is not the same as the protections of the FLSA." Aplee. Br. at 25. And, indeed, both this court and others have rejected arguments similar to the one now made by Defendants. In Shankle, we rejected the employer's argument that the arbitration agreement at issue should be enforced because of the possibility that "an arbitrator could 'shift' fees by awarding them as costs if the employee [wa]s successful on the merits." 163 F.3d at 1234, n.4. In doing so, we stated that "it [wa]s unlikely that an employee in [the plaintiff's] position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum." Id. Likewise, the Sixth Circuit has rejected a similar argument, noting that "[i]n many cases, if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration." Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 665 (6th Cir.

13

2003).

Finally, Defendants argue that Nesbitt failed to satisfy her burden on the effective vindication issue because she "presented no evidence regarding the cost of prosecuting her class or collective action claims in federal court, which information was necessary for the Court to perform the requisite analysis of comparing arbitration and court costs." Aplt. Br. at 18. We are under no obligation to consider this argument, however, because Defendants failed to raise it below.[2] See Martinez v. Angel Expl., LLC, 798 F.3d 968, 974 (10th Cir. 2015) ("We generally do not consider theories raised for the first time on appeal . . . .").

Thus, in sum, we reject Defendants' assertion that Nesbitt failed to meet her burden on the effective vindication issue.

---

[2] Even if we were to consider the issue, there is no merit to it. As the Sixth Circuit stated in Morrison, "[i]n many, if not most, cases, employees (and former employees) bringing . . . claims" against their employer (or former employer) "will be represented by attorneys on a contingency-fee basis," and thus "will face minimal costs in the judicial forum, as the attorney will cover most of the fees of litigation and advance the expenses incurred in discovery." 317 F.3d at 664. That appears to be precisely the situation in this case. Moreover, the Sixth Circuit emphasized that "[i]n the arbitral forum, the litigant faces an additional expense—the arbitrator's fee and costs—which are never incurred in the judicial forum." Id. Again, that is precisely the case here: in the arbitral forum, Nesbitt would be responsible for half of the arbitrator's fee and costs. In the judicial forum, in contrast, she would incur no such expenses. Finally, as Nesbitt notes in her appellate response brief, she "will bear no . . . litigation costs if she prevails [in federal court] on her [FLSA] claim" because of the FLSA's fee-shifting provisions. Aplee. Br. at 32.

14

*Did the district court misinterpret the Arbitration Agreement?*

Defendants next argue that the district court, in invoking the effective vindication exception to the FAA, erred in interpreting the fee and cost provisions of the Arbitration Agreement. In particular, Defendants argue that "the Arbitration Agreement is silent as to a prescribed allocation of arbitration fees and arbitrator costs" and that "the District Court should have interpreted [this] silence in a manner that would have eliminated the potential for burdensome fees, by requiring Defendants to bear those costs." Aplt. Br. at 19.

Defendants, however, are wrong on this point. To be sure, the Arbitration Agreement does not expressly mention arbitration fees and arbitrator costs. But it does invoke the AAA's Commercial Rules. And those Commercial Rules expressly address the issue of such fees and costs. In particular, Rule 53, entitled "Administrative Fees," states:

> As a non-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

AAA, Commercial Arbitration Rules, Rule 53 (2013). In turn, Rule 54, entitled "Expenses," provides:

> The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration,

15

including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

AAA, Commercial Arbitration Rules, Rule 54 (2013). Thus, in sum, the Arbitration Agreement is not, as the Defendants suggest, "silent" on the issue of fees and costs, but rather effectively incorporates Rules 53 and 54.

Defendants also argue that "the District Court's conclusory assertion that the Arbitration Agreement precludes an arbitrator from awarding attorneys' fees at the conclusion of a successful FLSA claim is unsupportable." Aplt. Br. at 19. "At most," they argue, "the Arbitration Agreement requires Plaintiff to initially bear the expense of her own counsel." Id. "But," Defendants argue, "the arbitration clause makes clear that an award of attorneys' fees is nevertheless available by both expressly requiring an arbitrator to apply federal law 'to the fullest extent possible' and by incorporating the AAA Commercial Rules which expressly allow post-award fee shifting." Id.

The Arbitration Agreement provides, in pertinent part, that "[e]ach party shall bear the expense of its own counsel . . . ." Aplt. App. at 83. Thus, without question, Nesbitt would be required to bear, at least initially, her own attorneys' fees. What is less clear is whether this express fee provision can be overridden by other portions of the Arbitration Agreement. As Defendants note, the

16

Arbitration Agreement states that "[a]rbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association applying federal law to the fullest extent possible." Id. Further, it is undisputed that the FLSA, which presumably would be the "federal law" applied by the arbitrator, requires a district court to award "a reasonable attorney's fee . . . and costs of the action" to a successful plaintiff. 29 U.S.C. § 216(b). As for the American Arbitration Association's Commercial Rules (which, as noted, are incorporated into the Arbitration Agreement), they state that "[t]he award of the arbitrator(s) may include . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." AAA, Commercial Arbitration Rules, Rule 47(d)(ii) (2013). Finally, the Arbitration Agreement itself expressly states, in all-capital letters, that it limits "THE RIGHT TO CERTAIN REMEDIES AND FORMS OF RELIEF" that would otherwise be available in a court proceeding. Aplt. App. at 83.

Considering all of these provisions together, we are left to conclude that the Arbitration Agreement is internally inconsistent and thus ambiguous regarding the availability of a fee award for Nesbitt. On the one hand, the Arbitration Agreement expressly states that each party shall bear its own fees and that remedies and forms of relief available in court may be limited by the Agreement. On the other hand, the Arbitration Agreement incorporates both the applicable substantive law at issue, in this case the FLSA, and the AAA's Commercial

17

Rules.  As noted, these provisions would appear to authorize the arbitrator, should Nesbitt prevail, to include fees in his or her award.

All of which leads us to the same conclusion we reached in <u>Shankle</u>: "it is unlikely that an employee in [the plaintiff's] position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum."  163 F.3d at 1234 n.4.

III

For the reasons outlined above, we AFFIRM the district court's order denying Defendants' motion to stay the proceedings and compel arbitration.[3]

---

[3] In her appellate response brief, Nesbitt argues that the district court erred in rejecting her argument that the Arbitration Agreement was unenforceable because it was unconscionable.  We find it unnecessary to reach this issue.